Robert E. MacDonnell, as Receiver of the Medina Gas and Electric Light Company, Respondent, *v.* Buffalo Loan, Trust and Safe Deposit Company, Appellant.

1. Conversion — Demand and Refusal — Acts Constituting Conversion of Property by Custodian Thereof. The rule, that one who comes lawfully into possession of the property of another cannot be charged with the conversion thereof until after demand and refusal, has no application where the lawful custodian commits an overt and possible act of conversion by an unlawful sale or disposition of the property.

2. Same — Conversion of Bonds by Custodian Thereof — What Acts Constitute Conversion — Statute of Limitations. Where negotiable bonds of a corporation, issued for corporate purposes only, and lawfully in the custody of a trust company, designated as trustee of the mortgage executed to secure the bonds, were wrongfully pledged to the company by the secretary of the corporation as security for loans to himself, personally, the apparent participation of the company in the wrongful act of the secretary, with full knowledge thereof, by its acceptance of the bonds as a pledge, did not, in the absence of a demand and refusal, constitute a conversion; for it might still have elected to hold the bonds as trustee. But, where, in consideration of the payment of its loan to said secretary by a certain bank, the trust company transferred the bonds to such bank, it assumed to treat them as its own and from that moment was guilty of a conversion of the bonds, and no demand therefor by the true owner thereof was necessary. Hence, the Statute of Limitations began to run against an action against the trust company, for

the conversion of the bonds, not from the date the bonds were pledged, but from the date on which they were assigned and transferred to the bank.

3. SAME — CORPORATION MORTGAGE — TERM, "CHOSES IN ACTION," IN DESCRIPTION OF PROPERTY COVERED BY MORTGAGE — DOES NOT INCLUDE CAUSE OF ACTION AGAINST TRUSTEE OF MORTGAGE FOR CONVERSION OF BONDS SECURED BY THE MORTGAGE.   Although the mortgage, given to secure the bonds in question, included in the description of the property covered thereby, all debts, demands, dues and choses in action which might be acquired after the execution of the mortgage and "after default" therein, it cannot be held that the term "choses in action" includes a cause of action arising out of the conversion of the very bonds which the mortgage was given to secure and which arose after the execution of the mortgage but before default therein; especially, where a fair construction of the language employed does not support the conclusion, repugnant to justice and good morals, that it was the intention of the parties to include within the term "choses in action," a cause of action arising from a subsequent wrongful act, constituting a flagrant breach of trust, by the trustee of the mortgage.

4. SAME — CORPORATION MORTGAGE — AFTER-ACQUIRED PROPERTY — WHEN IT IS NOT SOLD AT FORECLOSURE SALE.   While a corporate mortgage may include property to be thereafter acquired, it is, as to chattels not then *in esse*, merely an executory contract to give a lien which a court of equity may enforce as between the parties, when the chattels come into existence, or which the mortgagee may make effective by taking actual possession of the after-acquired property; but such contract will not be enforced where the rights of the creditors of the mortgagor will be affected thereby; especially where the mortgagee has not filed or refiled its mortgage as a chattel mortgage, as then required by law, or done anything to reduce to its possession any of the after-acquired property of the mortgagor.

5. SAME — ACTION FOR MORTGAGEE'S CONVERSION — INEFFECTIVE RELEASE THEREOF, BY PURCHASER AT FORECLOSURE SALE.   Where, subsequent to the conversion of the bonds by the trust company, the trust mortgage was foreclosed and the property, covered thereby, sold under an order of sale in which after-acquired personal property was nominally included but none was specified or identified so as to bring it to the attention of the court and no provision, subjecting after-acquired chattels or choses in action to the lien of the mortgage, was made by the court, a release to the trust company, by the assignee of the purchaser at the foreclosure sale, is ineffectual as a bar to the action for the conversion of the bonds.

6. SAME — CONVERSION OF BONDS BY CUSTODIAN THEREOF — WHEN TAKING THEREOF BY LEGAL PROCESS, NOT A DEFENSE TO ACTION FOR CONVERSION.   Although, at the time the bonds in question were transferred by the trust company to said bank, in consideration of the payment

by the latter of the secretary's indebtedness to the company, the bonds had been attached in an action brought by said bank against the secretary, that fact does not relieve the trust company from the charge of conversion arising from the transfer of the bonds; where the attachment was invalid because the action was brought against the secretary and not against the corporation which owned the bonds, and where the trust company instead of notifying the owner of the bonds, or resisting the attachment action, assumed to hold the bonds as pledgee, and, upon the discontinuance of the action and the falling of the attachment, voluntarily turned them over to the bank in consideration of the payment of the secretary's indebtedness for which the bonds were pledged.

7. COSTS — EXTRA ALLOWANCE.   It is only where there is no power in the trial court to grant an extra allowance that the Court of Appeals will review an order granting the same, and when that power exists the amount of the allowance rests in the discretion of the court below, subject only to the limitations of the statutes relating thereto.

*Medina Gas & El. Light Co.* v. *Buffalo Loan, T. & S. D. Co.*, 119 App. Div. 245, affirmed.

(Argued May 28, 1908;  decided October 6, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 1, 1907, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and an order granting an extra allowance of costs.

The plaintiff has recovered damages against the defendant for the alleged conversion of ten bonds which were each of the par value of $1,000.   The judgment appealed from represents their face value with interest.

On the 15th day of September, 1886, the board of directors of the Medina Gas Light Company adopted a resolution authorizing the corporation to borrow $10,000 upon its ten bonds to be issued.   These bonds were to be negotiated by the president for the benefit of the corporation and the proceeds thereof were to be used " for the purpose of defraying its existing indebtedness and for its other lawful purposes."   A mortgage was duly executed to secure these bonds, and delivered to the defendant as trustee.   On the 21st day of September, 1886, before the mortgage was recorded, Stranahan, the secretary of the Medina Gas Light Company, pledged these

bonds to the defendant as security for personal loans which it had made and was to make to him. This was done without the knowledge or consent of the Medina Gas Light Company and with full knowledge on the part of the defendant that the bonds were authorized only for corporate purposes and were to be negotiated only by the president of the gas company while they were in fact being used and negotiated by Stranahan, its secretary, for his personal ends. None of the moneys loaned by the defendant to Stranahan were applied by the latter to any of the purposes recited in the resolution under which the mortgage was executed and the bonds were issued. In 1890 Stranahan became indebted to the German-American Bank of Buffalo. That bank commenced an action against Stranahan and caused an attachment to be issued upon the ten bonds executed by the Medina Gas Light Company then in the possession of the defendant. That action was discontinued and the attachment withdrawn. On the same day the German-American Bank paid to the defendant the amount of Stranahan's indebtedness to it and took over as security the ten bonds, together with other collateral which had been pledged to the defendant by Stranahan. At the time of this transaction between the German-American Bank and the defendant, the former had no knowledge or notice that there was any irregularity in the issuance or negotiation of the bonds, except such notice as might arise from the fact that all of the coupons which fell due from March 15th, 1887, to and including September 15th, 1890, were attached to the bonds and apparently unpaid.

This was the situation in April, 1891, when the Medina Gas Light Company and the Medina Electric Company became consolidated under the name of the Medina Gas and Electric Light Company. In 1893 the defendant, at the request of the German-American Bank, brought an action to foreclose the mortgage given to secure the ten bonds above mentioned. In that action the Medina Gas and Electric Light Company litigated the validity of the issuance and negotiation of the bonds and it was held that Stranahan had wrongfully used

them to secure the payment of his own debt without the knowledge or authority of the Medina Gas Light Company and with full knowledge on the part of the defendant, but that they were valid securities in the hands of the German-American Bank because it was a *bona fide* purchaser for value. Upon that decision a decree of foreclosure and sale was entered which was subsequently affirmed both in the Appellate Division and in this court.

On the 26th day of August, 1895, the Medina Gas and Electric Light Company demanded of the defendant the bonds and coupons thus converted or their equivalent in cash, and this demand was not complied with. At that time the bonds had no quotable value and the real estate and plant of the gas and electric company was found to be worth upwards of $20,000. On the 7th of June, 1900, there was a sale of the property of that company under the decree of foreclosure above mentioned and it was purchased by one Andrew L. Fennessy for the sum of $14,450. In the decree and notice of sale under which Fennessy made his purchase the real estate comprising the plant of the Medina Gas and Electric Light Company was described by metes and bounds and this was followed by a clause, also contained in the mortgage, authorizing the sheriff to sell and convey " All and singular the other real estate, lands, tenements and hereditaments of the said Medina Gas Light Company, whether the same then were or should thereafter be acquired by the said Medina Gas Light Company; and all and singular the scales, tools, machinery, fixtures, implements and appliances of every nature and description; and all brands, stamps, trade marks and other articles of personal property which then were or should thereafter be acquired by the said Medina Gas Light Company, and after default should be made in the conditions of said mortgage, all and singular the materials manufactured, unmanufactured, or in process of manufacture; bills receivable, debts, demands, dues, choses in action, accounts and all other property real, personal or mixed which had been acquired or might thereafter be acquired by the said Medina

Gas Light Company, with all and singular its rights, privileges and franchises; and all and singular the estate, right, interest, property, possession, claims and demands whatsoever, as well in equity as in law of the said Medina Gas Light Company in or to the same and every part and parcel thereof with the appurtenances."

On the 10th day of July, 1900, Fennessy assigned to one Henry Koons all the rights which he had acquired under his purchase in the foreclosure proceedings, and by virtue of this assignment Koons attempted, in February, 1902, to release the defendant from the claim which the Medina Gas and Electric Light Company, as successor in interest of the Medina . Gas Light Company, had against this defendant on account of the alleged conversion of the bonds and coupons referred to. Upon these facts, and others which are referred to in the opinion, the Supreme Court at Special Term decided that the plaintiff was entitled to recover, and the judgment entered upon that decision has been affirmed at the Appellate Division.

*Edward W. Hatch, Tracy C. Becker* and *Lincoln A. Groat* for appellant.    The cause of action alleged in the plaintiff's complaint was included in the description of the property covered by the trust mortgage of the Medina Gas Light Company and was subject to the lien thereof, was included in the property directed to be sold by the judgment in the foreclosure action and passed to the purchaser at the foreclosure sale. (Purdy's Beach on Priv. Corp. § 1176; Cook on Corp. [5th ed.] § 857; *Platt* v. *N. Y. & S. B. R. R. Co.,* 9 App. Div. 87; 153 N. Y. 670; *N. Y. S. & T. Co.* v. *S. G. Co.,* 88 Hun, 569; 157 N. Y. 689; *W. T. Co.* v. *M. I. Works,* 106 App. Div. 195; *C. T. Co.* v. *Kneeland,* 138 U. S. 419; *Deeley* v. *Dwight,* 132 N. Y. 59; *Nat. Bank of Deposit* v. *Rogers,* 166 N. Y. 390; *Zartman* v. *F. Nat. Bank,* 189 N. Y. 267; *Ramsey* v. *Gould,* 57 Barb. 398; *Streever* v. *Birch,* 62 Hun, 302; *Matter of Denny,* 2 Hill, 223; *Parshall* v. *Eggert,* 54 N. Y. 18.)    The facts as found by the trial court constitute a conversion of the bonds in question by the

defendant when they were delivered to it by R. A. Stranahan,
on September 21, 1886, and a cause of action for such conver-
sion accrued to the Medina Gas Light Company at that time.
(*B. L. T. & S. D. Co.* v. *Medina Gas Co.,* 162 N. Y. 67;
*Goodwin* v. *Wertheimer,* 99 N. Y. 149; *Tallman* v. *Turck,*
26 Barb. 167; *Pease* v. *Smith,* 61 N. Y. 477; *Briggs* v.
*Jones,* 8 Misc. Rep. 261; 149 N. Y. 577; *Ranous* v. *Hughes,*
19 Misc. Rep. 46; *Korneman* v. *F. H. B. Co.,* 4 Misc. Rep.
299; *Ganley* v. *T. C. Nat. Bank,* 98 N. Y. 487; *Moore* v.
*Hamilton,* 44 N. Y. 666; *Perry* v. *Levenson,* 82 App. Div.
94.) The cause of action set forth in the plaintiff's complaint
herein became vested in Mr. Koons as assignee of the pur-
chaser at the foreclosure sale, and was by Koons fully satis-
fied and discharged, and the defendant herein was released
therefrom. (Code Civ. Pro. § 1910; *McKee* v. *Judd,* 12
N. Y. 622; *Drake* v. *Smith,* 12 Hun, 532; *McKeage* v.
*Hanover Ins. Co.,* 81 N. Y. 38; *Baumann* v. *Jefferson,* 4
Misc. Rep. 147.) The acts of Stranahan and Linley in pledg-
ing the bonds in question with the German-American Bank
at a time when they were the owners of the entire capital
stock of the Medina Gas Light Company ratified and con-
firmed all preceding transactions relating to said bonds and
estopped both the Medina Gas Light Company and the plain-
tiff, as its successor in interest, from maintaining this action.
(Morawetz on Priv. Corp. § 625; *Welsh* v. *I. & T. Nat.
Bank,* 122 N. Y. 177; *Martin* v. *N. F. P. Mfg. Co.,* 122
N. Y. 165; *Barr* v. *N. Y., L. E. & W. R. R. Co.,* 125 N. Y.
263; *P. G. Co.* v. *Berry,* 113 U. S. 322; *Steinway* v. *Stein-
way,* 2 App. Div. 301, 304.) The pledge of said bonds by
Stranahan with the defendant to secure the payment of his
individual debt on the 21st day of September, 1886, and the
acceptance of said pledge by the defendant with full knowl-
edge of all the facts, as found by the trial court, was an act
of conversion on the part of the defendant, and more than
six years having elapsed thereafter before the commencement
of this action, it is barred by the Statute of Limitations.
(*F. Nat. Bank* v. *Shuler,* 153 N. Y. 163; *Matter of Rogers,*

153 N. Y. 316; *Matter of Van Voorhees*, 55 Misc. Rep. 185; *Int. G. Trust* v. *Tod*, 170 N. Y. 233; *Laverty* v. *Snethen*, 68 N. Y. 522; *Shotwell* v. *Wendover*, 1 Johns. 65; *Reynolds* v. *Shuler*, 5 Cow. 323; *Pickering* v. *Darling*, 3 App. Div. 553; *Usher* v. *Van Vranken*, 48 App. Div. 413; *Goodwin* v. *Wertheimer*, 99 N. Y. 149.) The order granting to the plaintiff an additional allowance of costs is erroneous and should be reversed. (*Campbell* v. *Emslie*, 188 N. Y. 599; Code Civ. Pro. § 3253; *S. T. Co.* v. *N. Y. C. & H. R. R. R. Co.*, 178 N. Y. 407; *Smith* v. *L. V. R. R. Co.*, 77 App. Div. 47; *Frey* v. *N. Y. C. & H. R. R. R. Co.*, 114 App. Div. 623.)

*Louis Marshall* for respondent. The uncontradicted facts establish a perfect cause of action in favor of the plaintiff against the defendant for the conversion of the ten bonds and of the coupons thereto attached which were delivered by it to the German-American Bank. (*B. L., T. & S. D. Co.* v. *M. G. & El. L. Co.*, 162 N. Y. 67; *S. & L. P. R. R. Co.* v. *Arnold*, 167 N. Y. 368; *Palmer* v. *Ring*, 113 App. Div. 643; *Smith* v. *Hurd*, 12 Metc. 371; *Humphreys* v. *McKissock*, 140 U. S. 312; *G. S. Bank* v. *Vil. of Suspension Bridge*, 75 Hun, 590; 159 N. Y. 362; *Shaw* v. *S. H. N. Co.*, 144 N. Y. 220; *Decker* v. *Mathews*, 12 N. Y. 313; *Comstock* v. *Hier*, 73 N. Y. 269; *Farnham* v. *Benedict*, 107 N. Y. 159.) The plaintiff's cause of action accrued upon the demand of the bonds from the latter by the plaintiff therefor, and the refusal to return the same on August 26, 1895, irrespective of the fact that at the time of the commencement of the action the plaintiff had not actually paid the amount of the bonds. (*Decker* v. *Mathews*, 12 N. Y. 313; *Thayer* v. *Manley*, 73 N. Y. 305; *Betz* v. *Dailey*, 3 N. Y. S. R. 309; *M. E. Ry. Co.* v. *Kneeland*, 120 N. Y. 134.) The pretended release of the defendant by Koons from the cause of action described in the complaint herein, is ineffective and constitutes no defense to this action. (*Wertheimer* v. *Goodwin*, 99 N. Y. 149; *Converse* v. *Sickles*, 146 N. Y. 206; *Cas-*

*tle* v. *C. E. Bank*, 75 Hun, 89; 148 N. Y. 122; *Tompkins* v. *F. G. L. Co.*, 188 N. Y. 261; *Moran* v. *Abbott*, 26 App. Div. 570; *Madison* v. *Gross*, 54 App. Div. 129; *Nat. L. Assn.* v. *Thompson*, 38 App. Div. 445; *M. & M. R. R. Co.* v. *M. & W. R. R. Co.*, 20 Wis. 147; *Eaton* v. *Simonds*, 14 Pick. 98; *Wells* v. *Cooper*, 25 N. J. L. 137; *James* v. *Morey*, 2 Cow. 284; *Strout* v. *N. W. Co.*, 9 Cal. 78.) The action is not barred by the Statute of Limitations. (*Zebley* v. *F. L. & T. Co.*, 139 N. Y. 461; *King* v. *Mac Kellar*, 109 N. Y. 215; Code Civ. Pro. § 410, subd. 1; *Henry* v. *Allen*, 151 N. Y. 1; *Shipman* v. *Bank of New York*, 126 N. Y. 318; *Bienenstok* v. *Ammidown*, 155 N. Y. 47; *Edwards* v. *Dooley*, 120 N. Y. 40; *Timpson* v. *Allen*, 149 N. Y. 513; *Ring* v. *L. I. R. E. Exchange*, 93 App. Div. 447; *Gauley* v. *T. C. Nat. Bank*, 98 N. Y. 494.) The order granting an extra allowance of $1,000 was clearly justified, the action being both difficult and extraordinary. (*S. T. Co.* v. *N. Y. C. & H. R. R. R. Co.*, 178 N. Y. 407; *People* v. *Bootman*, 180 N. Y. 1.)

Werner, J. The legal conclusion that the defendant converted the bonds in suit is based upon findings of fact which are amply supported by the evidence. All of the learned justices of the Appellate Division who sat in the case agreed that there had been a conversion of the bonds, but differed as to the time when it was effected. Four of the justices were of the opinion that the conversion took place when the defendant transferred the bonds to the German-American Bank on December 27th, 1890, and one of them thought that the conversion was consummated when Stranahan pledged the bonds to the defendant on September 21st, 1886. Thus there is unanimity of opinion as to the fact of the conversion, but a difference of views as to the time when it took place, and the importance of this divergence lies in the fact that if the bonds were converted in September, 1886, the six years' Statute of Limitations had expired before this action was commenced in September, 1895; but if the conversion was not committed until December,

1890, the defense of the Statute of Limitations, inter-
posed by the defendant, is of no avail.   The plaintiff
asserts that there was no conversion until the 26th day
of August, 1895, when his predecessor in title made a
demand upon the defendant for the return of the bonds or the
payment of their value, and this is upon the theory that the
defendant's original possession of the bonds was lawful, so
that no cause of action for conversion could have arisen until
after a demand by the plaintiff and a refusal by the defend-
ant.   We think the plaintiff's contention is not tenable.   The
rule that one who comes lawfully into possession of property
cannot be charged with conversion thereof until after a
demand and refusal is too well established to justify extended
discussion.   (*Goodwin* v. *Werthemier*, 99 N. Y. 149; *Con-
verse* v. *Sickles*, 146 N. Y. 200; *Castle* v. *Corn Exchange
Bank*, 148 N. Y. 122; *Tompkins* v. *Fonda Glove Lining
Co.*, 188 N. Y. 261.)   But it has no application in a case
where the lawful custodion of property commits an overt and
positive act of conversion by an unlawful sale or disposition
of the same.   (*Pease* v. *Smith*, 61 N. Y. 480.)   So long as
the defendant was in possession of the bonds, under circum-
stances which might have made that possession lawful or
unlawful at its will, a demand and refusal were necessary to
put it in the wrong, but when it assumed to transfer the
bonds to the German-American Bank it committed an act
which was in hostility to the right and title of the plaintiff.
This was a distinct and unequivocal conversion.   It was a
wrongful taking, which at once created a cause of action in
favor of the owner of the bonds.   No demand was necessary.
The sole object of a demand is to convert an otherwise lawful
possession into an unlawful one.   In such a case the refusal
furnishes the only evidence of a conversion.   We think that
the majority of the justices of the Appellate Division were
clearly right in holding that the defendant converted the
bonds on the 27th day of December, 1890, and not on Sep-
tember 21st, 1886, as contended for by the defendant, or on
the 26th day of August, 1895, as claimed by the plaintiff.

The defendant acquired lawful possession of the bonds in 1886 and retained such possession until it transferred them to the German-American Bank in December, 1890. The character of this possession was not affected by the wrongdoing of Stranahan in pledging the bonds to secure his personal indebtedness to the defendant, nor by the apparent participation of the latter in this unauthorized act, for it could still have elected to continue in custody thereof as trustee. Having once lawfully acquired the physical custody of the bonds, the defendant could not be guilty of a conversion of them until it did something to indicate that it proposed to ignore the owner's rights and assert its own claim in hostility thereto. Nothing of that kind transpired until December, 1890, when the defendant assumed to treat the bonds as its own by transferring them to the German-American Bank in consideration of the payment by the latter of Stranahan's indebtedness to the defendant. That was the time when the defendant first evinced its purpose to ignore its trust and repudiate its lawful custody of the bonds by claiming dominion over them in hostility to the rightful ownership of the plaintiff's predecessor in title. As this action was commenced within six years of defendant's conversion of the bonds, and within two years and seven months of the time when the plaintiff's predecessor in title discovered the fact, it is clear that the defense of the Statute of Limitations cannot be upheld.

The defendant also contends that the cause of action upon which the plaintiff has recovered in this suit was included in the description of the property covered by the mortgage of the Medina Gas Light Company to the defendant as trustee for the bondholders; that it was subject to the lien of the mortgage; and that it passed to the purchaser at the foreclosure sale and through him by assignment to Koons, who executed a release to the defendant. This contention is planted upon the clause in the mortgage quoted in the foregoing statement of facts by which the subsequently acquired real and personal property of the mortgagor is declared to be subject to the lien

of the mortgage. This clause, after enumerating various kinds of personal property which might be subsequently acquired, includes "bills receivable, debts, demands, dues, choses in action and accounts," but it is to be observed that these items are restricted to such as might be acquired after the execution of the mortgage "*and after default shall be made herein.*" Conceding then for the moment that the general designation "choses in action" is broad enough to include causes of action arising out of torts, the plaintiff's cause of action would not be embraced because it came into existence *before* any default had occurred in the obligations which the mortgagor had assumed.

A careful study of the context of the clause in the mortgage relied upon by the defendant to uphold its title to the cause of action in this suit clearly shows, however, that it could not have been within the contemplation of the parties to the instrument that the term "choses in action" should include a cause of action arising out of a tort committed in dealing with the bonds which the mortgage was given to secure. The "choses in action" referred to in that clause were obviously such as might come into existence and be acquired by the mortgagor through its contractual relations with others in the regular course of business. We find the expression associated with such items as "bills receivable, debts, demands, dues and accounts." These kindred terms define "choses in action" as property *ejusdem generis*, and not causes of action arising out of torts committed after the execution of the mortgage. The principle of *noscitur a sociis* applies.

While these considerations are entirely sufficient to annihilate the defendant's contention that it has acquired the cause of action upon which the plaintiff has recovered herein, they are almost technical as compared with the higher and broader reasons for which the defendant's plea should be ignored. To speak plainly, it seems to us like trifling with the meaning of plain English, expressed in a solemn contract to argue that the term "choses in action" can possibly refer

to a cause of action arising out of a conversion of the very bonds which are the subject-matter of the mortgage in which that term is employed. To uphold the defendant's bold and novel contention in this behalf we should have to adopt the theory that the parties to the trust mortgage contemplated that the trustee would be derelict in its duty, and had deliberately decided in advance that any cause of action which might arise from the trustee's turpitude should subsequently be acquired by it to serve as a shield against those affected by its wrongful acts. This is so repugnant to good morals and so shocking to the sense of justice that we find it difficult to discuss the subject with any degree of judicial moderation. We leave it, therefore, with the additional suggestion that under no construction which can possibly be given to the term " choses in action " could the defendant be permitted to succeed upon this branch of the case. A mortgage may be so drawn as to embrace within its lien property that may be acquired by the mortgagor subsequent to the execution of the mortgage. This is one of the familiar innovations upon the common law which have been absorbed into our jurisprudence. But such a mortgage, as to chattels not *in esse* when it is executed, is merely an executory contract to give a lien which a court of equity may enforce, as between the parties, when the chattels come into existence, or which the mortgagee may, in some cases, make effective by taking actual possession of the after-acquired property. (*National Bank of Deposit* v. *Rogers*, 166 N. Y. 380, 390 ; *Zartman* v. *First Nat'l Bank of Waterloo*, 189 N. Y. 267 ; *Rochester Distilling Co.* v. *Rasey*, 142 N. Y. 570.) While such a contract is enforceable, as suggested, between the parties thereto, it is hedged about by the limitation that it shall not affect the rights of other creditors of the mortgagor. It is said that here there are no such creditors. We think otherwise. In 1891 the mortgagor was consolidated with the Medina Electric Company under the name of the Medina Gas and Electric Light Company. The latter corporation, which succeeded to all the rights and obligations of the mortgagor, executed a second mortgage

to the Holland Trust Company for $75,000 to secure bonds to be issued to that amount.  Of the bonds thus authorized $64,000 were in fact issued and are still outstanding.  If these subsequent bondholders are not creditors of the first mortgagor, it is difficult to define their legal status.  But even if we assume that they are not creditors within the rule which they invoke that does not help the defendant.  Prior to the commencement of the foreclosure suit the defendant had done nothing to reduce to its possession any of the after-acquired property of the mortgagor.  It had not filed or refiled its mortgage as a chattel mortgage although that was required by the law as it stood until 1897.  (L. 1897, ch. 418, sec. 91.)  The complaint, decree, sheriff's deed and other proceedings in the foreclosure action all emphasize the fact that the court was not asked to lend its equitable aid for the purpose of subjecting to the lien of the mortgage any chattels or choses in action that came into existence after the execution of the mortgage.  The whole record in the foreclosure suit indicates that although after-acquired personal property was nominally included in the mortgage and was referred to in the decree, notice of sale and sheriff's deed, none was specified or identified so as to bring it to the attention of the court.  It was, in short, the usual foreclosure of a corporate mortgage in which the recital as to after-acquired personal property was treated as an empty formality as to which the court's action was neither sought nor desired.  Thus there is no aspect of the case in which the purchaser at the foreclosure sale can be said to have acquired the cause of action upon which the plaintiff has recovered herein, and it follows as a logical corollary that the assignees of the purchaser could not convey or release it to the defendant.

The argument on behalf of the defendant to the effect that Stranahan's ownership of practically all of the capital stock of the Medina Gas Light Company gave him the right to deal with the corporate bonds for his own personal benefit, was disposed of in the foreclosure action (162 N. Y. 76) and need not be further discussed now.

The defendant's contention that it was legal error to grant the plaintiff an extra allowance of costs cannot be upheld. In a case where there is no power in the trial court to grant an extra allowance, the right to review that question extends to this court; but when the power exists and the question arises whether it was properly exercised, the Appellate Division is the court of last resort. In this case the power existed, and the amount to be granted rested in the discretion of the courts below, subject only to the limitations of the statute. (*People* v. *Bootman,* 180 N. Y. 1.) The other questions presented on behalf of the defendant have been considered. We do not think it necessary to discuss them since they cannot affect the conclusion which we have reached.

The judgment of the Appellate Division should be affirmed, with costs.

Cullen, Ch. J. I concur in the opinion of Werner, J., but have a word to add in reference to the contention in the dissenting opinion of my brother Haight that the surrender of the bonds to the German-American Bank, when that company instituted its suit against Stranahan and obtained an attachment, was not a conversion, because the bonds were taken from the defendant under legal process. To this there are three sufficient answers:

1. The process under which the bailee is justified in surrendering the property of his bailor must be valid. Here the attachment is against Stranahan, and the courts gave no authority to the sheriff to seize the property of the gas light company.

2. When the property is taken out of his custody by valid, legal process, the bailee must, within a reasonable time, give notice to the bailor. (*Bliven* v. *Hudson River R. R. Co.,* 36 N. Y. 403; *Roberts* v. *Stuyvesant Safe Deposit Co.,* 123 N. Y. 57.) No such notice was given by the defendant.

3. Instead of resisting as far as it was able, the defendant assumed to hold the bonds as pledgee, and obtained as a condition of the surrender the amount of its loan. All this

has been said on the assumption that the bonds were taken from the defendant by the sheriff and transferred to the German-American Savings Bank under the attachment. The evidence does not show this fact and, indeed, it was impossible that it should have occurred. On the discontinuance of the suit the attachment fell; it was the duty of the sheriff to return the bonds to the defendant, and if he failed to do so the defendant should have made him. It is, therefore, apparent that the bonds were given to the German-American Bank solely under a voluntary agreement between the defendant and that bank.

Haight, J. (dissenting). This action was brought to recover damages for the alleged conversion of ten bonds, which were by their terms made negotiable, of the par value of $1,000 each, issued by the Medina Gas Light Company on the 15th day of September, 1886, together with the coupons accrued thereon. These bonds were made payable at the Buffalo Loan, Trust and Safe Deposit Company's office in the city of Buffalo and their payment was secured by a mortgage executed by the Medina Gas Light Company upon all of its property, real and personal, to the defendant as trustee, bearing the same date as that of the bonds. Thereafter and on the 21st day of September, 1886, Stranahan, the secretary and treasurer of the company, pledged these bonds to the defendant as security for personal loans made to him, and for an additional loan then made of $6,000, with full knowledge on the part of the defendant that the bonds were authorized only for corporate purposes and were to be negotiated only by the president of the Medina Gas Light Company.

The Medina Gas Light Company was incorporated and had issued three hundred shares of stock of the par value of $100 each, and at the time of this transaction Stranahan was the owner of two hundred and ninety-eight shares, James Robertson, the president of the company, was the owner of one share, and Hosea B. Dayton was the owner of the other share.

In 1890 the German-American Bank of Buffalo brought an action against Stranahan to recover a judgment for loans theretofore made by it to him and caused an attachment to be issued and levied upon the ten bonds in question, then in possession of the defendant. The German-American Bank then paid to the defendant the amount for which it held the bonds as collateral security, took the bonds from the defendant and on the same day arranged with Stranahan to give him additional time to pay the loan, and discontinued the action. Subsequently at the request of the German-American Bank the defendant, as trustee, brought an action to foreclose the trust mortgage, and under a judgment entered in that action the property covered by the mortgage belonging to the Medina Gas Light Company was sold and the proceeds applied upon the indebtedness of Stranahan to the German-American Bank.

On the 26th day of August, 1895, the Medina Gas & Electric Light Company, a new corporation which had acquired all of the rights, franchises and interests of the Medina Gas Light Company, demanded of the defendant the bonds and coupons in question, or their equivalent in cash, but the defendant refused to comply with such demand.

This action was brought by the receiver of the new corporation on the 14th day of September, 1895. Among the defenses interposed by the defendant's answer was the claim that the cause of action herein alleged passed to the purchaser upon the foreclosure sale, who for a valuable consideration had executed to the defendant a release of all claims against the defendant growing out of the transaction in question, and that more than six years had elapsed after the alleged wrongful conversion of the bonds before the commencement of this action.

Upon the trial the plaintiff affirmatively proved that at the time the mortgage was executed and the bonds issued by the Medina Gas Light Company it was free from debt and had no creditors. The contention is made on behalf of the defendant that Stranahan was the owner of all of the stock of

the company, and that he had merely given one share to Robertson and one to Dayton, persons in his employ, to qualify them to act as directors, but that he remained the equitable owner of those two shares. Upon this theory the suggestion is made that Stranahan, being the owner of all the stock, acted with the consent of the other two directors who were controlled by him, and there being no creditors of the corporation to protect, he could dispose of the assets and obligations of the corporation as he saw fit. But the difficulty with this suggestion is that the trial court has not found that Stranahan was the owner of the two shares of stock held by Robertson and Dayton, and no exception appears in the record which brings up this question for review.

The trial court reached the conclusion that a conversion of the bonds by the defendant took place when it refused to comply with the demand made upon it in September, 1895, and thereupon awarded judgment for the amount of the face value of the bonds and coupons. None of the judges sitting in the Appellate Division concurred in the view of the trial court upon this question, but a majority were of the opinion that a conversion of the bonds took place by the defendant in 1890, at the time they were delivered to the German-American Bank. This was upon the theory that the defendant up to that time held the bonds as trustee under the mortgage, and that when it delivered the bonds to the German-American Bank, thus parting with them as trustee, it constituted a conversion.

In determining the questions herein presented it becomes necessary to examine the facts more in detail. The first question which arises is as to whether the bonds were converted by the defendant in 1890, at the time they were taken by the German-American Bank. The finding of the trial court upon that question is as follows : " On or about the 27th day of December, 1890, the said Robert A. Stranahan was individually indebted to the German-American Bank, a banking corporation doing business in the city of Buffalo, in the sum of $8,000, and interest from April 1, 1889. On that day the

said bank commenced an action by attachment and publication of the summons against the said Stranahan, and caused the said warrant of attachment to be levied upon the interest of the said Stranahan in the shares of the Tonawanda Gas Light Company, and upon said $10,000 of bonds of the Medina Gas Light Company then in the possession of the defendant. Thereafter and on the same day, the said bank discontinued said action and withdrew its attachment, and paid to the defendant the sum of $14,650, the amount for which the said Stranahan was then indebted to it, and for which the defendant held said shares of stock and bonds as collateral security, and the defendant delivered to the said German-American Bank the said stock and the said bonds, with the notes of the said Stranahan representing such indebtedness." It will be observed that under this finding, the levying of the attachment by the German-American Bank upon the bonds in question, the payment to the defendant of the sum of $14,650, the amount for which it held the bonds in pledge, the discontinuing of the action and the withdrawal of the attachment all occurred on the same day. The order in which these transactions took place is not set forth. It does not clearly appear whether the attachment was withdrawn before or after the money had been paid to the defendant and the bonds surrendered. If the attachment had been withdrawn and the action discontinued before the claim of the defendant had been paid, and the payment was thereafter made and the bonds delivered to the German-American Bank, then there would be some ground for the conclusion reached by the Appellate Division. If, however, the attachment was levied upon the bonds and then the amount of the claim of the defendant for which it held the bonds as collateral security was paid, thus discharging any further right of the defendant to hold possession of the bonds, the sheriff, acting for the German-American Bank, would then become the legal custodian of the bonds, for, they being negotiable, levy could only be made by taking them into actual possession by the sheriff. (Code Civil Procedure sec. 649, sub. 2 ; *Von*

*Hesse* v. *Mackaye*, 55 Hun, 365 ; affd., 121 N. Y. 694, on opinion below.)   If the defendant surrendered its possession under such circumstances and thereafter, although it may have been during the same hour the German-American Bank arranged with Stranahan to give him additional time to pay, and discontinued the action and withdrew the levy, a very different conclusion would follow with reference to there being a conversion by the defendant, for then it would clearly appear that they had been taken from the defendant under a legal process of the law.   Inasmuch as the finding is obscure upon this branch of the case, it becomes the duty of the court to examine the evidence upon which the finding was based, and determine if possible the construction that should be given to the finding.   The evidence upon the subject is somewhat meager.   The circumstances were given by Henry W. Burt, the cashier of the German-American Bank.   He testified as to the commencement of the action, the procuring of the attachment and the levying upon the bonds in question.   He then said : " In order to secure this equity which we supposed was in this collateral held by the trust company we took up the loan and paid them $14,650.   At that time Stranahan owed the German-American Bank about $9,000.   These collaterals were ten Medina Gas Light Company bonds and three hundred and five shares of Tonawanda Gas Light Company's stock.   *   *   *   Mr. Stranahan said he had these bonds and this collateral there, this company's stock, and there was some equity in it which by taking up the loan we would acquire and it would become the property of the bank ; and in order to save that equity we did so ; that made his indebtedness to us in the neighborhood of twenty-three or four thousand dollars, for which we held the stock as collateral, and these bonds, the Tonawanda Gas stock and the Medina Gas bonds."   He further testified that afterwards the German-American Bank made an additional loan to Stranahan of about $15,000.   Upon his cross-examination he said : " We had the transactions with Stranahan before we had anything to do with these Medina bonds.   He owed us about $9,000.   I think it was

in that neighborhood. Then we brought this action in which we attached three hundred and five shares of Tonawanda stock and the ten Medina bonds. And on the same day that we attached them we took up the paper which was held by the trust company and took securities which we had attached, and Mr. Stranahan after that time, from time to time, made various payments to our bank on account of the claims which we held against him." It will be noted that he said nothing about discontinuing the action or withdrawing the attachment before taking up the paper ; and it is quite apparent that they did not, for the cashier of the German-American Bank had had a talk with Stranahan about these bonds and stock of the Tonawanda Gas Light Company which were held by the defendant as collateral security for loans made, and learned that there was an equity which could be obtained by taking up the loans and obtaining the bonds and stock. It was, therefore, for this purpose that the attachment was levied and the loan taken up. It consequently is apparent that these bonds were taken from the possession of the defendant under this process of the court, issued upon the application of the German-American Bank, and that the defendant had no power to resist the same unless it was a trustee or bailee of the bonds of the Medina Gas Light Company.

It may be conceded that the practice has prevailed to some extent on the part of corporations in issuing bonds to make the trustee under the mortgage the custodian of the bonds and its selling agent so that the bonds would be negotiated by the trustee, and by the trustee delivered to the purchaser. But the record fails to disclose any such arrangement in this case. The resolutions of the board of directors of the Medina Gas Light Company, authorizing the loan, are recited in full in the mortgage that was executed to the Buffalo Loan, Trust and Safe Deposit Company. These resolutions provided for the borrowing of the sum of $10,000, and for that purpose the making of ten negotiable bonds of $1,000 each, bearing date the 15th of September, 1886, payable at the office of the Buffalo Loan, Trust and Safe Deposit Company in the city of

Buffalo, at the expiration of twenty years, with interest at six per cent per annum payable semi-annually, pursuant to coupons annexed to such bonds; and for the purpose of securing the payment of such bonds, that the company execute and deliver to the trust company mentioned, a mortgage bearing even date with the bonds upon its property, real and personal, specifically describing the same, and then provided: "Resolved, that the president cause such bonds and mortgage to be prepared in such form and containing such conditions as he shall deem proper, and that when prepared he cause the corporate seal to be affixed thereto and execute the same under his hand, attested by the signature of the secretary, and that when the same be so prepared and executed he make delivery of *such mortgage* and negotiate the said bonds upon the best terms possible." It will be observed that the president was here authorized to deliver the mortgage. It does not state to whom it shall be delivered, but inasmuch as it ran to the trust company, the fair interpretation of the resolution is that it was to be delivered to the trust company, whom it had made the trustee under the mortgage to pay the coupons and bonds as they matured and became due and payable. But it further will be observed that the president was not by this resolution authorized to deliver the bonds to the trustee. The bonds he was to negotiate himself upon the best possible terms. He thereby became the custodian of the bonds and the person who was authorized to negotiate them. There were provisions made in the mortgage under which the bonds were to be identified. The trustee was required to certify upon the back of each bond that this was one of the bonds included in and covered by the mortgage. But this was all. No custody or control of the bonds was given to the trustee, and it had no powers or duties devolved upon it further than to make such certificate and then to pay the coupons and bonds as they matured and became due, as provided by the terms of the mortgage. It is, therefore, apparent that the defendant as trustee under the mortgage was not given any jurisdiction or power to control the disposition of the bonds,

8

their custody or negotiation, and it consequently follows that it had no power or authority to resist the attachment which had been levied upon the bonds.

"There is no pretense or claim that the bonds had been placed in the custody of the trustee for safekeeping, or that it became a bailee. Consequently the relation of bailor and bailee is not involved and need not be now considered. What is claimed and found as a fact is that at the time the bonds were brought to the defendant to be certified for identification they were then delivered to the defendant by Stranahan as collateral security for the payment of certain notes of his, upon which he had made previous loans and upon which he had that day borrowed an additional sum of $6,000. The defendant thereupon took the bonds into its custody, not as trustee, but as pledgee, holding them as collateral security for the payment of the loans made by Stranahan."

The question now arises as to when the bonds were converted and by whom. The old rule that a party is bound by the allegation of his pleading is still recognized as binding, and the time has not yet arrived in which the courts should overrule it or regard it as obsolete. The plaintiff in his complaint, by the ninth paragraph, thereby alleges: " That on or about the 21st day of September, 1886, the said Stranahan, without the knowledge and consent of said Medina Gas Light Company, and without authority from it, and for his own individual purposes, *diverted* the aforesaid bonds and the coupons thereto attached, the property of the said Medina Gas Light Company, and to the immediate possession of which it was entitled, from the purpose for which they were executed as aforesaid, and which was authorized by said Medina Gas Light Company, and pledged the said bonds and the coupons thereto attached with the defendant as security for various loans, some of which had been theretofore made, and some of which were then and others thereafter made to him by the said defendant, which at the time of the pledging of said securities with it as aforesaid, and at all times thereafter, had full knowledge of all the matters hereinbefore set forth, and

especially of the terms of the resolution authorizing the issuing of said bonds, and also well knew that said bonds had never come into possession of said Medina Gas Light Company after being certified by the defendant as aforesaid." The trial court by its tenth and eleventh findings of fact has followed the allegations of the complaint, finding each and every fact therein alleged and adding thereto that the *diversion* was *wrongful*. We thus have it alleged in the complaint that on the 21st day of September, 1886, Stranahan, as secretary and treasurer of the company, diverted these bonds to his own personal use and pledged them to the defendant for personal loans which he had made and for an additional loan then made to him of $6,000, and that the defendant took them upon such pledge with full knowledge that the bonds were authorized and issued for corporate purposes only and were to be negotiated only by the president of the Medina Gas Light Company, and that the diversion was wrongful. Again this identical question was reviewed in this court in the case of *Buffalo Loan, Trust and Safe Deposit Company* v. *Medina Gas & Electric Light Company* (162 N. Y. 67). That was the action brought to foreclose the mortgage. The referee in that case had found the facts with reference to the pledging of the bonds on September 21st, 1886, the same as they have been found by the trial court in this case. As a conclusion of law the referee found that this transfer of the bonds " was an unauthorized diversion from the purposes for which they were issued, and did not give the plaintiff title to the same as against the Medina Gas Light Company." The Appellate Division in its opinion reviewing the conclusion of the referee held that the referee erred in holding that the transaction amounted to a diversion of the securities. This court affirmed the judgment in that case upon the ground that the German-American Bank was a *bona fide* purchaser and had no knowledge that the bonds had been previously diverted. But E. T. Bartlett, J., in delivering the opinion of the court, calls attention to the reasoning of the Appellate Division upon which it differed with

the referee, and then says that in affirming the judgment the court dissents from the reasoning of the Appellate Division as to that question, thereby sustaining the conclusion of the referee. "We thus have the allegation of the complaint, the finding of the trial court and the decision of this court in the foreclosure action, all to the effect that these bonds were wrongfully diverted by Stranahan on the 21st day of September, 1886, and used for his own purpose. This constituted a conversion, and he thereby immediately became liable to respond in damages to the gas light company. "It further follows that the defendant having taken these bonds as pledgee of Stranahan as security for loans made, with full knowledge of all the facts, to which attention has been called, and that these bonds had then been wrongfully diverted by Stranahan, itself became chargeable as for conversion and thereby became liable to respond in damages to the gas light company. It further appearing, as we have seen, that the defendant from that time on held these bonds as collateral security for its protection and not as trustee for the gas light company, and it also appearing that it having no jurisdiction or right to control the disposition or the custody of the bonds as trustee, and that its possession was wrongful, no demand was necessary to be made by the gas light company before the cause of action accrued; but the Statute of Limitations commenced running from the time that the defendant wrongfully diverted these bonds by taking them from Stranahan for its own use and purpose." (*Comstock* v. *Hier,* 73 N. Y. 269; *Murray* v. *Burling,* 10 Johns. 172; *Ganley* v. *Troy City Nat. Bank,* 98 N. Y. 487; *Saratoga Gas & El. L. Co.* v. *Hazard,* 55 Hun, 251; affd., 121 N. Y. 677; *Pease* v. *Smith,* 61 N. Y. 477; *Laverty* v. *Snethen,* 68 N. Y. 522; *Birdsall* v. *Davenport,* 43 Hun, 552.)

The mortgage included all the real estate and personal property which the gas light company possessed, and that which should thereafter be acquired, including bills receivable, debts, demands and *choses in action.* After the property was sold in the foreclosure judgment the defendant, for a valuable

consideration, procured from the purchaser under that sale a release from the claim here presented. And the claim is now made that this right of action passed to the purchaser under that sale, the claim then being a chose in action. I have not, however, considered this defense, preferring to rest the decision upon the question of the Statute of Limitations.

Upon the trial, at the conclusion of the plaintiff's case, the defendant moved for a dismissal of the plaintiff's complaint upon the ground that the cause of action, if any, was barred by the Statute of Limitations. At the conclusion of the evidence the defendant again moved for dismissal of the complaint upon the former grounds stated including others, and the motion was denied and an exception taken. Inasmuch as the facts upon which my conclusions rest are chiefly alleged in the complaint and are undisputed, I think the judgment should be reversed and the complaint dismissed, with costs in all courts.

GRAY, VANN and CHASE, JJ., concur with WERNER, J., and CULLEN, Ch. J.; WILLARD BARTLETT, J., concurs with HAIGHT, J.

Judgment affirmed.