## ROBSON v. DAILEY et al.

(Supreme Court, Equity Term, Yates County. September 9, 1911.)

1. CHATTEL MORTGAGES (§ 278*)—FORECLOSURE—ACTIONS—SUFFICIENCY OF EVIDENCE.

   Evidence in an action to foreclose a mortgage on merchandise *held* to show that the parties agreed when the mortgage was made that the mortgagor should retain control over the goods on hand and subsequently acquired.

   [Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 278.*]

2. CHATTEL MORTGAGES (§ 188*)—VALIDITY—CONTROL OF MORTGAGED PROPERTY.

   A mortgage of a stock of merchandise by a corporation was void as to its creditors, where, when it was executed, the parties agreed that the mortgagor should retain control of the goods and continue the business as theretofore, purchasing and selling stock and paying debts from the proceeds.

   [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 393–404; Dec. Dig. § 188.*]

3. CHATTEL MORTGAGES (§ 18*)—VALIDITY—AFTER-ACQUIRED PROPERTY.

   A mortgage of merchandise could not include property acquired in the conduct of the business after the mortgage was executed.

   [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 61–66; Dec. Dig. § 18.*]

Mortgage foreclosure action by A. Flag Robson, as trustee, against Norris S. Dailey, as trustee in bankruptcy of the John Conklin Sons Company, bankrupt, impleaded with others. Judgment directed for defendant named as stated.

Huson & Lincoln, for plaintiff.
Charles W. Kimball, for defendant Dailey.

CLARK, J. The John Conklin Sons Company, a corporation, about the 1st of January, 1907, succeeded to the business of John Conklin & Son, at Penn Yan, N. Y., and conducted that business until about May 31, 1910, when it. made a general assignment. The assignee took possession of its property, made an inventory thereof, and, after the inventory and schedules were filed, he continued the business under an order of the court, selling off the goods which had come into his hands at retail, and continued to act as such assignee until the John Conklin Sons Company was adjudicated a bankrupt, September 28, 1910, when the assignee turned over to the trustee in bankruptcy all of the estate of the corporation which had come into his hands which had not been disposed of. The business of John Conklin & Son was a general hardware business, conducted at Penn Yan, N. Y., and the copartnership also dealt in coal, mason supplies, carriages, agricultural implements, etc., and the corporation, John Conklin Sons Company, continued that business. On the 1st day of

March, 1907, the corporation duly executed a mortgage to this plaintiff, as trustee, to secure the payment of bonds aggregating in amount $25,000, 17 of which bonds of the par value of $500 each were actually issued. This mortgage attempted to cover all the property of the corporation, its real estate, personal property, accounts, and bills receivable, and attempted to include, not only the property which the company had at that time, but any property which it might thereafter acquire. The business which the corporation purchased from the copartnership, and which it continued, was an ordinary retail hardware business, and it was continued precisely as it had been conducted by the copartnership, the same person being in charge. After the mortgage was given, the corporation kept right on in the business of selling the stock on hand, both for cash and on credit, using any moneys received to replenish stock and to pay old debts, and to meet the ordinary expenses of conducting the business. The corporation was in somewhat straightened financial circumstances at the time the mortgage was given, and, when there was a default in the payment of interest on the bonds, the mortgage was foreclosed in this action, and by stipulation the real estate was sold, and the controversy here arises over the fund realized from the sale of the personal property, the plaintiff claiming it for the bondholders by virtue of the mortgage in question, and defendant as trustee in bankruptcy, and representing the creditors of the defunct corporation, alleging that the mortgage as against the creditors of the corporation was absolutely void, for the reason that at the time it was given there was an understanding that the mortgagor could continue in possession of the goods and sell them, using the proceeds in replenishing stock, paying old debts, and generally to keep the business going. This was a chattel mortgage in so far as it pertained to the personal property, but it was executed by a corporation to secure the payment of certain bonds, and it was recorded in the office of the clerk of the county where its principal office was located, so it was not necessary to file the instrument as a chattel mortgage. Laws 1897, c. 418, § 91.

But the serious question here is, Was this mortgage in so far as it related to the personal property valid as against the creditors of the corporation now represented by the trustee in bankruptcy? Upon the facts established in this case I am satisfied that the question must be answered in the negative, because the mortgagor retained possession of this personal property, and sold it precisely as it had done before the mortgage was given, and without regard to that instrument; also because it attempted to bring in and cover property acquired by the corporation subsequent to the date of the mortgage, and which the mortgagee had never reduced to possession.

The learned counsel for plaintiff urges with much force that even though the mortgagor retained possession of the goods in question, and sold from the stock, that did not invalidate the mortgage as against the creditors, for the reason that there was no agreement between the parties when the mortgage was made that the mortgagor could continue to use and sell the property. But the evidence shows clearly that it was the understanding between the mortgagor and mortgagee that the former should continue in possession of the property, sell

from the stock, and use the proceeds to continue the business as before, paying old debts, replenishing the stock, and paying current expenses incident to the running of the business. When the mortgage was given, the corporation needed the money to carry on its business. It was a heavy borrower, and continued to be right down to the time of its assignment, and sales at retail were continued after the mortgage was given precisely the same as they had been made before. Mr. Conklin, who had charge of the business for the partnership, and subsequently for the corporation, went on with the business after the mortgage was given the same as he had done previously, selling from the stock, collecting old accounts, adjusting debts, selling goods on credit; in fact no change whatever was made in the manner of doing business, and no accounting was ever made by the mortgagor to the plaintiff, trustee for the bondholders, and he never took possession of any of the property. Indeed, the mortgagor went right on with the business, selling goods from the stock out of the store and other places where stock was kept, and with the proceeds of such sales he paid old debts, bought new goods, and paid the current expenses of carrying on the business, and the mortgagor remained in uninterrupted possession and control of all the personal property of the corporation from the time the mortgage was given until it made a general assignment.

Plaintiff had full knowledge at the time the mortgage was made that the mortgagor was thus to continue the business, and sell the personal property referred to, and he knew that the business was being continued and the stock being sold by the mortgagor precisely as it had been before the mortgage was given, and he made no protest against it, never took or sought to take possession of any of the property, and never demanded an accounting of the mortgagor, although plaintiff resided in the same town where the business was being conducted, and had full knowledge of how it was being conducted. Indeed, the plaintiff testified, in substance, that he knew at the time the mortgage was given that the mortgagor was going on with the business just the same, and he assented to it, made no objection, and knew that that course was pursued right up to the time of the assignment.

[1] That testimony, coupled with the statement in the mortgage itself, that it was made, in part at least, to enable the corporation "to carry on its business," leaves no doubt in my mind that there was an agreement entered into by the parties at the time the mortgage was made whereby the mortgagor had absolute dominion, not only over the mortgaged property which was on hand at the time the assignment was made, but any that might be subsequently acquired, with full right to the mortgagor to sell or dispose of any or all the property, paying old debts, buying new stock, paying expenses of running the business, and, in fact, proceed with the business and use the property the same as though no mortgage had ever been made.

[2] Under these circumstances when the rights of the creditors of the mortgagor are involved, it must be held that as against them and their representative, the trustee in bankruptcy, this mortgage was void. Zartman v. First National Bank, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083; MacDonnell v. Buffalo Loan, etc., Co., 193 N. Y.

92, 85 N. E. 801; Hangen v. Hachemeister, 114 N. Y. 566, 21 N. E. 1046, 5 L. R. A. 137, 11 Am. St. Rep. 691; Southard v. Benner, 72 N. Y. 424.

[3] I think the mortgage in question could not attach to personal property acquired after the date of its execution (Rochester Distilling Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635), and, as to the property on hand when it was given, it is void as against creditors, because there was an agreement or understanding between the parties when the mortgage was made, to the effect that the mortgagor might sell the goods and use the proceeds, and that agreement was carried out with the knowledge of the mortgagee. If there had been no understanding to that effect, and the mortgagor had sold these goods without the knowledge of the trustee for the bondholders, plaintiff in this action, a very different situation would arise, but, under the circumstances as established in this case, I think the transaction as a matter of law was fraudulent as against the creditors of the mortgagor.

If I am correct in these conclusions, it follows that judgment must be directed in favor of defendant to the effect that the mortgage in question in so far as it related to personal property is void, and that the fund now on hand, being proceeds from sales of personal property, is adjudged free of all liens growing out of said mortgage, and that the answering defendant have costs of this action, to be paid out of said fund.

Findings may be submitted and judgment entered accordingly.