OPINION OF THE COURT
Ira Gammerman, J.
This is an action to recover a deposit on a subsequently canceled mortgage application. Plaintiff, the owner of a building at 470 West End Avenue, New York City, gave defendant William J. Dwyer & Co., Inc. (Dwyer) written authorization to seek mortgage refinancing, expressly limiting that defendant’s authority to obtaining refinancing on particular terms and conditions. One of those conditions was the absence of any prepayment penalties in the existing mortgage on the building. When plaintiff learned that prepayment penalties on the existing mortgage would indeed be incurred, it immediately gave written and oral notice to Dwyer that its authority had been terminated. Nevertheless, Dwyer transferred $5,000 from plaintiff’s account to its own and then remitted the funds to the defendant East River Savings Bank (the bank), as a good faith refundable deposit on a mortgage application. The deposit took the form of a check drawn on Dwyer’s account, payable to the East River Savings Bank.
A week later, plaintiff gave the bank telephone notice that Dwyer’s authority to negotiate the mortgage had been revoked. A representative of the bank responded that certain expenses of processing the application might be deducted from the $5,000 deposit. Despite this conversation between plaintiff’s representative and the bank, Dwyer wrote to the bank *1026 two days later requesting continued consideration of the application and stating that the $5,000 check represented funds forwarded by the plaintiff. At the same time, Dwyer told plaintiff to look to the bank for any refund of the deposit. Shortly thereafter, the plaintiff made oral and written demands for a return .of the funds, reiterating that the funds belonged to it, that Dwyer’s authority had been terminated, and that the funds had been remitted after revocation of Dwyer’s agency. The bank refused to refund the money to plaintiff, and instead, returned the $5,000 check, unnegotiated, to Dwyer.
Defendant Dwyer defaulted. (The motion to vacate that default is denied per separate opinion.) Plaintiff seeks recovery from the bank on theories of conversion, breach of contract, and breach of fiduciary duty.
Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition of the exclusion of the owner’s rights (10 NY Jur, Conversion, § 1).
The cause of action is established when one who owns and has a right to possession of property, proves that the property is in the unauthorized possession of another. (Bunge Corp. v Manufacturers Hanover Trust Co., 65 Misc 2d 829, mod 37 AD2d 409, affd 31 NY2d 223.)
The court finds no merit to the bank’s contention that a check cannot be converted. A check is representative of money and can be the subject of an action in trover or conversion. (See Pawson v Miller, 66 App Div 12; Soma v Handrulis, 277 NY 223; 10 NY Jur, Conversion, § 17; 44 ALR2d 929.)
The court further rejects the bank’s assertion that it never possessed or controlled the funds involved. The bank retained the check for a substantial period of time, with the unfettered ability to negotiate the instrument at its discretion. (There were no threats from Dwyer to stop payment or otherwise interfere with the bank’s control over the funds.) The bank’s clear intent to exercise the right of ownership over the funds "to the alteration of their condition or the exclusion of the owner’s right” is manifest in the threat — made significantly to plaintiff, not to the drawer, Dwyer — to deduct the bank’s costs in processing the mortgage application. The bank had dominion over the funds, but merely chose not to exercise its control to the fullest extent possible. The bank’s return of the funds *1027 to Dwyer effectively deprived the rightful owner, plaintiff, of control.
Conversion must be distinguished from a mere breach of contract (see Luxonomy Cars v Citibank, N.A., 65 AD2d 549). The central question is whether the bank exceeded its authority and committed a tort violating an independent duty not based on the contract (Industrial & Gen. Trust v Tod, 170 NY 233). For example, a payee who uses a check for clearly unauthorized purposes is liable in conversion (see Tonelli v Chase Manhattan Bank N.A., 86 Misc 2d 680, affd 53 AD2d 183, affd 41 NY2d 667). A bank on notice that the payor lacked authority to issue a check for a particular purpose is similarly liable (see Mutual Trust Co. v Merchants Nat. Bank of City ofN. Y., 236 NY 478).
The bank’s retention of the deposit and its subsequent return to Dwyer was clearly unauthorized. The bank knew that the funds constituted a refundable deposit on plaintiff’s mortgage application; that the application had been withdrawn; and that the check forwarded by Dwyer represented funds of the plaintiff. The bank was also aware that Dwyer’s authority had been terminated; that the funds had been sent after the termination of its agency; and that the agent had instructed its former principal to look to the bank for return of the down payment. Under these circumstances, the bank had no authority to either retain the funds or return them to the discharged agent in the face of contrary instructions from the former principal. Wholly independent of the contractual agreement to accept a good faith refundable deposit in return for the processing of a mortgage application, the bank also had a duty to exercise reasonable care in safeguarding the deposit funds and in insuring that they were returned to the rightful owner. In light of all the information possessed by the bank, returning the deposit to the discharged agent amounted to a violation of this duty and an act of conversion. The fact that the bank’s possession of the funds was initially lawful is irrelevant. An action of conversion will lie against one who, although initially in lawful possession, either refuses the demand of the rightful owner for return of the goods, or who commits an overt and positive act of conversion (MacDonnell v Buffalo Loan, Trust & Safe Deposit Co., 193 NY 92).
The proper procedure for the bank to have followed would have been to commence an interpleader action against plaintiff and Dwyer pursuant to CPLR 1006. The court would find *1028 it difficult to conclude that the bank acted in good faith, but even if the court so found, the action for conversion would still lie, since good faith and ignorance are not valid defenses. (See Wright v Bank of Metropolis, 110 NY 237; Spraights v Hawley, 39 NY 441.)
The bank is also liable to plaintiff for breach of a contractual duty. The sum of $5,000 represented a good faith, refundable deposit by plaintiff on the mortgage application. The bank concedes that plaintiff was the applicant for the refinancing and the principal in the proposed transaction. Upon cancellation of the mortgage application, plaintiff was entitled, under the terms of the agreement, to the return of the deposit. Additionally, the bank is liable in quasi contract for money had and received. One who receives the principal’s property from an agent of another, knowing that the agent is thereby breaching a fiduciary duty to the principal, holds the property as a constructive trustee, or is subject to liability for its value, at the election of the principal (Restatement, Agency 2d, § 314, p 55).
The bank is therefore liable to plaintiff for the sum of $5,000 plus interest from April 21, 1975 and the clerk is directed to enter judgment accordingly.