**UNITED STATES of America and National Credit Union Administration Board, Plaintiffs,**

v.

**Alvin NAGELBERG, Sandra Breakstone Nagelberg, Bruce Tichy and Ian Grossfield, Defendants.**

No. CV–88–0371.

United States District Court, E.D. New York.

Aug. 26, 1991.

Christopher Lehmann, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiffs.

Louis C. Pulvermacher, New York City, for defendants Alvin Nagelberg and Sandra Breakstone Nagelberg.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

In this action for unjust enrichment, the government contends that defendants Alvin Nagelberg ["Alvin"], Sandra Breakstone Nagelberg ["Sandra"] and Bruce Tichy ["Tichy"][1] received funds belonging to the Hyfin Credit Union ["Hyfin"] to which they were not entitled and moves for summary judgment. The government alleges that these defendants received the principal amount of $1,427,825 and have failed to return the funds or any portion thereof.

Alvin was the sole shareholder and president of Al Nagelberg & Co. ["Nagelberg

---

1. Tichy is not involved in this motion because he and plaintiffs have entered into a settlement agreement.

Co."]. He was also the sole shareholder and president of Freshville Produce Distributors, Inc. ["Freshville"] until approximately 1983, when he transferred ownership and control to his wife, Sandra. Tichy was the treasurer and comptroller of both Freshville and Nagelberg Co. Ian Grossfield was the Vice President of Hyfin and allegedly had authority to issue checks drawn on Hyfin's account.[2] "Hyfin", an acronym for "Help Your Friend in Need", was a credit union chartered in 1955 to serve members of the Hyfin society. *U.S. v. Rivieccio*, 661 F.Supp. 281, 285 (E.D.N.Y.1987). In 1986, Hyfin collapsed due to irregularities and fraud in connection with its accounts and was merged into the Municipal Credit Union ["Municipal"]. As part of the merger, Municipal obtained an insurance agreement from the National Credit Union Administration, an independent federal agency that supervises and regulates credit unions and insures accounts in state and federally chartered credit unions. *See id.*

The government bases its argument on cancelled checks, written between 1981 and 1986, drawn against Hyfin accounts and deposited into accounts maintained by Freshville and Nagelberg Co. Specifically, the government asserts the following wrongdoing. (A) Grossfield issued or caused to be issued checks in the amount of $348,500 drawn on a Hyfin account and made payable to Alvin, Tichy or Nagelberg Co. The government contends that all of those checks were deposited into Nagelberg Co.'s account at Marine Midland Bank, number 016–72344–9, with the exception of a $2,000 check, made payable to Tichy, which was deposited into Republic National Bank account number 186–000–774. (B) Tichy issued checks in the amount of $799,800 drawn against Hyfin account number 718300 and deposited into Nagelberg Co. accounts at the Marine Midland and Republic National Banks. (C) Tichy issued checks in the amount of $279,525 drawn against Hyfin account number 718300 and made payable to and deposited

into the account of Freshville. According to the affidavit of Robert Trott, Hyfin account number 718300 was maintained in the name of Freshville.

It is undisputed that the defendants never applied for a Hyfin loan, never signed Hyfin loan documents and never tendered collateral for a loan. The Nagelberg defendants have opposed the government's motion, contending that they never endorsed or deposited Hyfin checks into accounts under their control. The government contends, however, that it is not necessary to prove wrongdoing by the defendants in order to recover for unjust enrichment. The government is correct.

## DISCUSSION

### A. *Unjust Enrichment*

▮ To establish unjust enrichment under New York law, plaintiff:

> must establish not only that there was enrichment, but that the enrichment was at the plaintiff's expense, and that the circumstances dictate that, in equity and good conscience, the defendant should be required to turn over its money to the plaintiff.

*Rivieccio*, 661 F.Supp. at 293, (citing *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 79 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986)). It is well established that unjust enrichment does not require proof of any wrongdoing by the enriched party. *Rivieccio*, 661 F.Supp. at 292; *Ptachewich v. Ptachewich*, 96 A.D.2d 582, 465 N.Y.S.2d 277, 278–79 (2d Dep't 1983). A court must make its determination based on legal inference drawn from circumstantial evidence, applying the principles of equity. *Sharp v. Kosmalski*, 40 N.Y.2d 119, 123, 351 N.E.2d 721, 724, 386 N.Y.S.2d 72, 76 (1976).

▮ In *Rivieccio*, this court denied defendants' motion to dismiss an unjust enrichment claim seeking return of Hyfin funds. As in the present case, there the

---

**2.** Grossfield is not involved in this motion because he is in default, as noted by the clerk of

the court on approximately September 12, 1990.

defendants allegedly improperly received Hyfin funds and passed them on to corporations under their ownership or control. The court rejected the defendants' argument that the government failed to allege that they personally received Hyfin funds. It is well established, the court held, that unjust enrichment "does not require the performance of any wrongful act by the one enriched. Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property 'under circumstances that in equity and good conscience he ought not to retain....'" *Rivieccio,* 661 F.Supp. at 292 (quoting *Simonds v. Simonds,* 45 N.Y.2d 233, 242, 408 N.Y.S.2d 359, 364, 380 N.E.2d 189, 194 (1978)).

In the present case the government has shown that none of the defendants nor Freshville nor Nagelberg Co. applied for or received Hyfin loans. Yet, $279,525 in Hyfin funds was deposited into accounts maintained by Freshville and $1,148,300 in Hyfin funds was deposited into accounts maintained by Nagelberg Co. The defendants have denied the allegation that they were enriched by Hyfin funds, but neither has offered a shred of evidence in support of his or her position. The record contains approximately 300 pages of transcripts of the defendants' depositions, but to nearly every question posed by the government each defendant responded with, "I invoke the Fifth Amendment" or an equivalent statement.

■ The government asks the court to draw adverse inferences from the defendants' invocation of their Fifth Amendment privileges. "It is well-established that the Fifth Amendment privilege against self-incrimination may be invoked in a civil proceeding." *U.S. v. Bonanno,* 683 F.Supp. 1411, 1449 (E.D.N.Y.1988) (citing *Pillsbury Co. v. Conboy,* 459 U.S. 248, 263–64, 103 S.Ct. 608, 617, 74 L.Ed.2d 430 (1983)). If it is, the trier of fact is permitted to draw an adverse inference from the invocation. *Bonanno,* 683 F.Supp. at 1449 (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976)). However, it is equally well-established that an adverse inference drawn from a defendant's invocation of the Fifth Amendment may not be the sole basis for a finding of liability. Independent, corroborative evidence of wrong-doing must be shown. *United States v. Local 560 of Int'l Brotherhood of Teamsters,* 780 F.2d 267, 292–93 n. 32 (3rd Cir.1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986); *See Nat'l Acceptance Co. v. Bathalter,* 705 F.2d 924, 928 (7th Cir.1983) ("It is our best judgment ... that even in a·civil case a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage.").

In the present case such independent evidence has been clearly documented. The government has identified numerous Hyfin checks, some of which were made payable to the defendants directly, some of which were made payable to the corporations they undisputedly controlled and most of which were deposited into the corporations' bank accounts. Although the defendants deny that they or their corporations received any benefit from Hyfin funds, the record is sufficient to permit the court to draw an adverse inference from the defendants' persistent invocation of the Fifth Amendment. The evidence indicates that Nagelberg Co. and Freshville were unjustly enriched at plaintiffs' expense.

**B.** *Piercing the Corporate Veil*

The government seeks to hold defendants Alvin and Sandra Nagelberg individually liable for the unjust enrichment of Nagelberg Co. and Freshville. In essence, although the government did not label its application as such, it relies on the doctrine which recognizes that a corporate veil may be pierced.

■ The Second Circuit has recently held that under New York law, a corporate veil will be pierced upon a showing "of fraud or upon complete control by the dominating [entity] that leads to a wrong against third parties." *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 138 (2d Cir.1991) (citing *Gartner v. Snyder,* 607 F.2d 582, 586 (2d Cir.1979) (corporate form will be disregarded "only

when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation ... and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.")). To determine whether piercing is appropriate in this case, the court must consider the following factors:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers ..., (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related [entities] deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by [the other entity], and (10) whether the corporation in question had property that was used by [another entity] as if it were its own.

*Wm. Passalacqua Builders*, 933 F.2d at 139. The foregoing list of factors is not inflexible or exclusive; the fact-finder must consider the totality of the evidence to decide whether "the presumption of corporate independence and limited shareholder liability ... is outweighed by the policy justifying disregarding the corporate form...." *Id.*

■ In the present case, the court cannot determine the applicability of many of the foregoing considerations, such as whether corporate records were maintained, based on the sparse evidence in the record. This is largely due to the defendants' refusal to testify. However, some of the factors are certainly present in this case. For example, it is clear that the corporations were inadequately capitalized, in light of their involuntary bankruptcies in 1986. There was great overlap of personnel—Alvin alone owned and controlled both Nagelberg Co. and Freshville until 1983, when he transferred the latter to his wife. Corporate funds were intermingled with those of the principals, as evidenced by checks made payable to Alvin and deposited into the bank account of Nagelberg Co. This commingling of funds suggests that the corporation was used by Alvin for his personal purposes. That Nagelberg Co. was controlled and owned solely by Alvin and that Freshville was also controlled and owned solely by Alvin and later solely by Sandra strongly suggests that the corporations were the individuals' alter egos. Finally, there is evidence of fraud in this case. Hyfin checks made out to the individual defendants were deposited into the corporations' bank accounts—even though neither of the corporations sought or received Hyfin loans. The evidence is sufficient to justify piercing the corporate veils of Nagelberg Co. and Freshville.

In sum, the government has sufficiently shown that Nagelberg Co. and Freshville were unjustly enriched with funds from Hyfin and that their principals should be held accountable. The government's motion for summary judgment is granted.

SO ORDERED.