### In re HARVARD KNITWEAR, INC., Debtor.

### In re STEPHEN DOUGLAS, LTD., Debtor.

**John S. PEREIRA, as Trustee of Harvard Knitwear, Inc., and Stephen Douglas, Ltd., Debtors, Plaintiff,**

**v.**

**Michael BINET, Morris Gluck, Bruce Masters, James Katz, Arnold Binet, Richard Binet, Frank R. Cohen, Cohen & Cohen, Schwartz & Company, Jacob H. Schwartz, Samuel Pfeiffer, Murray Hill Investments, Inc., Schlomo Berger, Yeshiva Jesode Hatorah V'es Chaim, Congregation Adas Yereim, Camp Adas Yereim and Naftoli Schlesinger, a/k/a Nat Schlesinger, Defendants.**

Bankruptcy Nos. 189–93895–353, 189–93696–353.

Adv. No. 192–1269–353.

United States Bankruptcy Court, E.D. New York.

April 27, 1993.

**620**

Donovan Leisure Newton & Irvine by A. Peter Lubitz, John H. Wilkinson, Patrick J. Sullivan, New York City, for trustee.

Anderson Kill Olick & Oshinsky, P.C. by Roy Babitt, Avraham C. Moskowitz, New York City, for Naftoli Schlesinger.

### DECISION ON MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CAUSE OF ACTION

JEROME FELLER, Bankruptcy Judge.

Defendant Naftoli Schlesinger, a/k/a Nat Schlesinger ("Schlesinger") moves to dismiss, as to him, the complaint ("Complaint") in the above-captioned adversary proceeding filed by John S. Pereira, the Chapter 7 Trustee ("Trustee") of Harvard Knitwear, Inc. ("Harvard") and Stephen Douglas, Ltd. ("Stephen Douglas") (Har-vard and Stephen Douglas are hereinafter collectively referred to as the "Company" or "Debtors"). The Complaint alleges that Schlesinger together with other defendants, in effect, looted the Debtors' assets on a wide scale. Schlesinger, however, asserts that the claims of the Trustee against him should be dismissed, pursuant to Fed. R.Civ.P. 12(b)(6) and Fed.R.Bankr.P. 7012(b), for failure to state a claim upon which relief may be granted.

For the reasons that follow, Schlesinger's motion to dismiss is denied in part and granted in part. To the extent Schlesinger seeks dismissal of charges that he misappropriated assets, the motion is denied. On the other hand, to the extent Schlesinger seeks dismissal of charges that he conspired with other defendants in the alleged misappropriation of the Debtors' assets, the motion is granted. Insofar as the motion is granted and impacted portions of the Complaint dismissed, the Trustee is accorded leave to replead.

### I.

Involuntary petitions under Chapter 7 of the Bankruptcy Code were filed against Harvard and Stephen Douglas on December 4, 1989, and November 16, 1989, respectively. In response to these involuntary petitions, Harvard and Stephen Douglas both filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code on December 18, 1989. The Company's reorganization effort was short lived. On March 7, 1990, this Court ordered the conversion of the Harvard and Stephen Douglas Chapter 11 cases to liquidation cases under Chapter 7. Plaintiff John S. Pereira was appointed on March 7, 1990, as interim Chapter 7 Trustee of Harvard and Stephen Douglas. He has since qualified and is acting as their permanent Chapter 7 Trustee.

Prior to conversion of these cases to Chapter 7 liquidations, the Company, operating out of the Williamsburg section of Brooklyn, New York, was a domestic distributor of women's and children's knitted apparel and women's sportswear under various brands and labels. The Company's

products were sold principally to multi-unit department stores and specialty chains at "popular" and "moderate-to-better" retail prices. Complaint ¶ 7.

## II.

In this lawsuit, the Trustee charges the defendants with the pillaging and ravaging of the Company's assets, causing its collapse and consequent bankruptcy. The Complaint, alleging some twenty-seven (27) claims for relief, was filed by the Trustee against eighteen (18) defendants, including Schlesinger, pursuant to, *inter alia*, 11 U.S.C. §§ 544, 547, 548 and 550 and applicable state law to recover voidable preferential and/or fraudulent transfers made by the Debtors, and to recover money or property of the Debtors. Complaint ¶ 1. The Trustee seeks redress for so-called "massive wrongs" perpetrated against the Company by way of alleged misappropriation of assets by the defendants. Complaint ¶ 16. In addition, recovery is sought for alleged specific voidable transfers made to or on behalf of some defendants. Further, the Trustee charges that certain defendants, including Schlesinger, and unnamed other persons conspired to use the Debtors, *inter alia*, as a vehicle for the transfer of "enormous sums of money" having no relationship to any business conducted by the Company, and to divert Harvard's and Stephen Douglas' funds, all for the personal gain and profit of defendants, and for the financial benefit of a "Community" centered in Brooklyn, New York. Complaint ¶¶ 16 and 17. Apart from specific recoveries sought for alleged misappropriation of property and alleged voidable transfers, the Trustee requests entry of a judgment against the defendants, including Schlesinger, awarding the Debtors' estates compensatory and punitive damages, each in the sum of "at least" $20 million. Complaint at page 55.

As set forth in the Complaint, the defendants include officers, directors and shareholders of the Company, many of whom are related by blood or marriage, former attorneys and accountants for the Company, certain seemingly interconnected New York not-for-profit religious corporations allegedly used as conduits for asset transfers, and persons affiliated with those not-for-profit religious corporations. The Complaint is mute as to Schlesinger's relationship or nexus to the Company and/or any of the other defendants. The description of Schlesinger in the Complaint is limited to statements that he is a resident of the State of New York and that he is an *alter ego* of Bali Jewelry, Ltd. ("Bali") and Private Brands, Inc. ("Private Brands"). Bali and Private Brands are referred to in the Complaint as "Schlesinger's Companies." *See, e.g.,* Complaint ¶¶ 43, 47, 68.

Structurally, the Trustee's two hundred thirty-three (233) paragraph Complaint consists of seventy-three paragraphs of jurisdictional statements, background, and allegations of factual predicate for the relief sought. The remaining one-hundred sixty (160) paragraphs delineate the twenty-seven claims for relief against the various defendants. Schlesinger is specifically mentioned in ten of the first seventy-three (73) paragraphs (¶¶ 14, 15, 17, 21, 43, 44, 47–48, 64, 68) and appears to be impliedly referred to in others (¶¶ 16, 18, 20, 26–40, 42, 45, 46, 65–67).

The Trustee charges that Company assets were diverted by the defendants and included in such diversions were the mysterious transfers of Company funds in undocumented fashion in favor of various defendants. Complaint ¶¶ 46 and 47. In this connection and specifically as to Schlesinger, Bali and Private Brands are alleged to have received $407,000 and $131,500, respectively, by endorsing or double endorsing checks issued by the Company, which checks were originally issued to numerous other persons or entities for no apparent consideration. Complaint ¶ 47. In addition, Bali and Private Brands are alleged to have received $832,564.10 from Harvard and $440,000 from Stephen Douglas by transfers made directly to them. Complaint ¶ 47.

Defendant Camp Adas Yereim ("CAY") is a summer camp for boys between the ages of 6 and 14 and a division of defendant Yeshiva Jesode Hatorah and/or Congregation Adas Yereim, religious corpora-

tions organized and existing under the law of the State of New York. Complaint ¶ 13. The Complaint alleges that "special" accounts were established in the name of CAY from which monies were loaned to Harvard. Complaint ¶ 68. Harvard, in turn, repaid monies in excess of $3 million, which amount exceeded the loans and, in at least some instances, represented repayment of loans never received by Harvard. Complaint ¶ 68. The Trustee alleges that Bali and Private Brands received amounts ranging from $500,000 to $1,000,000 from the CAY accounts into which Harvard had placed substantial monies. Complaint ¶ 68.

The Trustee charges that the Company engaged in extensive and unexplained transactions involving millions of dollars which were recorded primarily in loan and exchange accounts ("L/E Accounts"). Complaint ¶ 42. In the period January 1988 through August 1989 alone, some 1,500 transactions, involving tens of millions of dollars in cash or cash equivalents, were recorded in the L/E Accounts. Complaint ¶ 45. There are in almost all instances no loan documents, such as promissory notes, regarding these transactions and no records documenting any business purpose for these transactions. Complaint ¶ 42. On their face, these transfers had nothing to do with the manufacture and sale of apparel or the regular business operations of the Company. Complaint ¶ 45. Bali and Private Brands are alleged to have been beneficiaries of transactions transferring substantial sums of money through the L/E Accounts. Complaint ¶ 43.

In addition to the funds identified as having been received by Bali and Private Brands and by inference, via the alter ego theory, Schlesinger himself, the Trustee also alleges that Schlesinger and the other defendants entered into a common scheme or conspiracy to divert the Debtors' assets by means of, *inter alia*, the L/E Accounts, undocumented, mysterious and unexplained asset transfers to third parties. Complaint ¶¶ 44, 48, 64, 68. Accordingly, on the basis of the asserted conspiracy, the Trustee seeks redress from Schlesinger for asset diversions, even if they did not specifically

inure to his benefit or the benefit of his alleged *alter egos*, Bali and Private Brands.

Unlike other defendants in this lawsuit, Schlesinger is not specifically named in any of the twenty-seven (27) claims for relief contained in the Complaint. The relief sought against Schlesinger is set forth in one (1) claim for relief collectively lodged as against all defendants and reads as follows:

### AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

84. Plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 83, *supra*, as if fully set forth herein.

85. As part of the misconduct alleged herein, all defendants knowingly misappropriated and converted assets of the Company and/or knowingly participated in and aided and abetted the conversion and misappropriation of such assets and/or conspired among themselves and with others to misappropriate and convert such assets.

86. As a result of the misappropriation, conversion, participation, aiding and abetting and conspiring asserted in paragraph 85, above, the Company incurred substantial damages in an amount to be determined at trial, but in no amount less than twenty million dollars ($20,000,000).

### III.

Fed.R.Civ.P. 12(b)(6), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7012(b), provides for dismissal of a complaint "for failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) tests only the legal sufficiency of the complaint and is not designed to assay the factual basis of a claim for relief. *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). As the Supreme Court has reminded the bench and bar, "[t]he issue [on a Rule 12(b)(6) motion] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The standards by which a court determines the sufficiency of a complaint under a Rule 12(b)(6) motion are well known and are not here in dispute. The complaint need only satisfy the liberal notice pleading requirements set forth in Fed.R.Civ.P. 8(a)(2), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7008(a), which calls for "a short and plain statement of the claim" showing that the pleader is entitled to relief. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983). In directing its inquiry on a Rule 12(b)(6) motion to the sufficiency of the pleadings, a court must construe the complaint in the light most favorable to plaintiff, accept all plaintiff's allegations as true, and may dismiss the complaint only if it is clear that no relief could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 102; *Rauch v. RCA Corp.,* 861 F.2d 29, 30 (2d Cir.1988); *Holmes v. New York City Hous. Auth.,* 398 F.2d 262, 265 (2d Cir.1968). In sum, a motion to dismiss under Fed. R.Civ.P. 12(b)(6), "that would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, should be treated with the greatest of care." *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987).

Although the threshold pleading requirements to withstand a Rule 12(b)(6) motion to dismiss are low, the deference accorded a plaintiff is not without limitation. A defendant is entitled to fair notice of the nature of a plaintiff's claim and the grounds upon which it rests so as to frame a responsive pleading. Accordingly, to withstand a Rule 12(b)(6) motion to dismiss, a complaint must be "well pleaded" and contain more detail than bald, conclusory or overly generalized statements by a plaintiff that he has a valid claim of some type against the defendant. *See Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266 (1987); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Haber v. Brown,* 774 F.Supp. 877, 879 (S.D.N.Y.1991); 5A *Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d* § 1357, at 311–18 (2d ed. 1990). If the threshold pleading requirements are not met, dismissal is warranted, ordinarily accompanied by leave to file an amended complaint. *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991).

### IV.

The misconduct of Schlesinger alleged in the Complaint is framed in terms of conversion and misappropriation of assets. Misappropriation of assets is a broad term encompassing actions for monies had and received and unjust enrichment. And, the Trustee looks for recovery from Schlesinger, alternatively, under several legal theories, i.e., conversion, monies had and received and unjust enrichment. Schlesinger, in turn, has launched a blistering attack on the Complaint, contending that the Complaint, as against him, must be dismissed in its entirety under Rule 12(b)(6) for many reasons.[1] Distilled to its core, Schlesinger's main arguments are, i) the Complaint is fatally defective in stating a claim for conversion; ii) the Complaint is hopelessly flawed in stating a claim for

---

1. Some of these contentions warrant little attention and can be brushed aside summarily. Schlesinger asserts that the Complaint's claim for relief against him sounds in fraud and thus must be dismissed because it fails to satisfy the requisite particularity mandated by Fed.R.Civ.P. 9(b). The short answer to this argument is that Defendant cannot rewrite the Complaint which seeks recovery as against Schlesinger for conversion and misappropriation of property and not fraud. The requirements of Rule 9(b) are therefore simply not applicable. Schlesinger also argues that this Court is somehow bound by a state court dismissal of a lawsuit against numerous defendants, including Schlesinger, brought by one creditor based on charges that defendants fraudulently denuded the Debtors of their assets. Apart from the fact that this Complaint is not grounded in fraud as against Schlesinger, Defendant cites no authority in support of his novel "estoppel" argument in an action brought by a bankruptcy trustee on behalf of all creditors.

recovery under any theory because it does not allege that Schlesinger, as opposed to Bali and Private Brands, personally received any monies from the Debtors; and iii) the Complaint fails to provide a sufficient basis for piercing the corporate veil.[2]

### A.

■ To properly plead a cause of action for conversion, a complaint must allege that, i) plaintiff had title to the property in question or had a right to its possession; ii) the defendant converted a specifically identified property; iii) the defendant exercised unauthorized dominion over the identified property; and iv) the plaintiff was damaged by reason of the alleged conversion. *Meese v. Miller*, 79 A.D.2d 237, 242–43, 436 N.Y.S.2d 496, 500 (4th Dep't 1981); *AMF Inc. v. Algo Distribs., Ltd.*, 48 A.D.2d 352, 356–57, 369 N.Y.S.2d 460, 464 (2d Dep't 1975); *see also* 23 *N.Y.Jur.2d Conversion* § 78 (1982).

■ The essential elements of a claim for money had and received under New York law are that, i) defendant received money belonging to plaintiff; ii) defendant benefitted from receipt of the money; and iii) under principles of equity and good conscience, defendant should not be permitted to keep the money. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir.1984); *Board of Educ. v. Rettaliata*, 164 A.D.2d 900, 900–01, 559 N.Y.S.2d 758, 759 (2d Dep't 1990), *rev'd on other grounds*, 78 N.Y.2d 128, 572 N.Y.S.2d 885, 576 N.E.2d 716 (1991).

■ Under New York law, a plaintiff seeking to recover on a theory of unjust enrichment must allege and prove that the defendant was enriched, that such enrichment was at plaintiff's expense and that in equity and good conscience, the defendant should be required to return the money or property to the plaintiff. *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 79 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986); *United States v. Nagelberg*, 772 F.Supp. 120, 122

(E.D.N.Y.1991); *Hutton v. Klabal*, 726 F.Supp. 67, 72 (S.D.N.Y.1989); *Ross v. F.E.I., Inc.*, 150 A.D.2d 228, 232, 541 N.Y.S.2d 400, 403 (1st Dep't 1989); *Ptachewich v. Ptachewich*, 96 A.D.2d 582, 583, 465 N.Y.S.2d 277, 278–79 (2d Dep't 1983).

### B.

■ The Complaint alleges that Schlesinger was the beneficiary of unexplained and bewildering transfers of Debtors' funds. Such transfers are alleged to include approximately $1.8 million in Harvard and Stephen Douglas checks received directly from the Debtors or through check endorsements by third parties, sums ranging from $500,000 to $1,000,000 from the CAY accounts, and unquantified sums through the L/E Accounts maintained by the Company. Schlesinger argues that the Complaint fails to state a cognizable cause of action sounding in conversion for essentially two reasons. First, Schlesinger contends that the Complaint fails to identify specific property which was allegedly converted by him. Second, he asserts that the Complaint fails to allege an act of conversion, i.e., unauthorized dominion over assets of the Debtors. In that connection, Schlesinger argues that the Complaint does not allege that the checks were forged or stolen or that they were signed by a person without authority to issue such checks on behalf of the Debtors. The receipt of such checks, it is asserted, does not constitute an act of conversion because the exercise of dominion over them was expressly authorized by the Debtors or by third parties who endorsed the checks for the alleged benefit of Schlesinger.

■ These arguments have some merit in that they point out certain defects in the Complaint insofar as pleading properly a claim for conversion. Conversion arises out of an unauthorized exercise of dominion over specifically identifiable property of a defendant. To satisfy the "specifically identifiable property" element of the cause

---

**2.** Schlesinger's attack on the Complaint's conspiracy allegations is meritorious and is dis- cussed separately. *See infra* Section V.

of action, tangible personal property or specific money must be involved. *Independence Discount Corp. v. Bressner,* 47 A.D.2d 756, 757, 365 N.Y.S.2d 44, 46 (2d Dep't 1975). Accordingly, the Complaint is *prima facia* defective in asserting claims for conversion in respect of alleged transfers of unspecified monies from the CAY accounts and through the L/E Account. It is well established, however, that checks may be the subject of an action for conversion. *Pawson v. Miller,* 66 A.D. 12, 72 N.Y.S. 1011 (2d Dep't 1901); *470 West End Corp. v. East River Sav. Bank,* 102 Misc.2d 1024, 1026, 424 N.Y.S.2d 859, 860 (N.Y.Civ.Ct.1980).

■ Assuming, as Schlesinger contends, that the receipt of checks alleged to be the subject of conversion was initially authorized, a valid cause of action for conversion may nonetheless exist. Schlesinger's ongoing refusal to comply with the Trustee's demand for return of the sums transferred may well constitute conversion. A cause of action for conversion is not limited to unlawful takings of property, but could also encompass unlawful withholdings of property. *See generally* 23 *N.Y.Jur.2d Conversion* §§ 50–54 (1982). An action for conversion can lie against one who, although initially in lawful possession, refuses the demand of the rightful owner for return of the property. *See 470 West End Corp.,* 102 Misc.2d at 1027, 424 N.Y.S.2d at 861; *see also MacDonnell v. Buffalo Loan Trust & Safe Deposit, Co.,* 193 N.Y. 92, 101, 85 N.E. 801, 803 (1908) (citing caselaw).

■ In any event, the Trustee has adequately pled claims for relief against Schlesinger for money had and received or unjust enrichment. He has alleged that Schlesinger was the beneficiary of substantial sums of the Debtors' monies transferred, i) directly or indirectly via Company checks, ii) from the CAY accounts into which millions of dollars of Company funds found its way, and iii) from the L/E account maintained by the Company, all of which transfers are alleged to have been for no apparent business-related reason, or other consideration, or receipt of reason-

able equivalent value. Clearly, the Complaint satisfies the pleading requirements for causes of action sounding in money had and received and unjust enrichment in respect of all the alleged methods of claimed misappropriation.

■ Schlesinger minces no words in his criticism of the Trustee's frequent switching between several theories of recovery, i.e., conversion, money had and received, and unjust enrichment. This criticism is of no avail. Even if the Trustee were to have misstated or otherwise mislabeled his claims for relief, such would not be sufficient to warrant a dismissal of the Complaint, if the facts alleged entitle him to relief of any kind. As one court of appeals has stated:

> [A] complaint is not to be dismissed because the plaintiff's lawyer has misconceived the proper legal theory of [its] claim, but is sufficient if it shows that the plaintiff is entitled to *any* relief which the court can grant, regardless of whether it asks for the proper relief.

*Dotschay v. National Mut. Ins. Co.,* 246 F.2d 221, 223 (5th Cir.1957) (emphasis in original). To the same effect, see also *Haddock v. Board of Dental Examiners,* 777 F.2d 462, 464 (9th Cir.1985); *District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1081 (D.C.Cir.1984); *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784, 787 (8th Cir.), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979); *Parr v. Great Lakes Express Co.,* 484 F.2d 767, 773 (7th Cir.1973); *Brubrad Co. v. United States Postal Serv.,* 404 F.Supp. 691, 693 (E.D.N.Y.1975), *aff'd,* 538 F.2d 308 (2d Cir.), *cert. denied,* 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976); *American Airlines, Inc. v. Air Line Pilots Ass'n, Int'l,* 169 F.Supp. 777, 798 (S.D.N.Y.1958).

### C.

■ Nowhere in the Complaint is it alleged that Schlesinger personally, as opposed to Bali and Private Brands, received any money or other property from the Debtors. The Complaint, however, does allege that Schlesinger "dominated and controlled" and was the *"alter ego"* of Bali

and Private Brands "treating assets of such corporations as [his] own". Complaint at ¶ 15. Thus, the Trustee seeks recovery from Schlesinger on the hypothesis that Schlesinger was the *alter ego* of Bali and Private Brands, the actual recipients of the amounts allegedly wrongfully transferred. This centrality of the alter ego concept renders the Complaint, according to Schlesinger, utterly defective as to him.

Schlesinger asserts that the *alter ego* predicate for the lawsuit against him is pled in an impermissible conclusory fashion in that the Complaint does not plead specific facts which, if proven, would support the claim that Bali and Private Brands could be considered his *alter egos.* Because the Trustee, the argument continues, has failed to plead underlying facts to support the *alter ego* claim, he has failed to state a cause of action holding Schlesinger personally liable under any theory of law, be it conversion, money had and received or unjust enrichment.

■■■ Citing New York pleading cases, Schlesinger contends that in order to pierce the corporate veil, it is insufficient to allege that a defendant dominated and controlled the corporate entity; rather specific facts supporting such alleged domination and control must be detailed in a complaint in order to impose personal liability premised on an *alter ego* theory. Schlesinger's position is incorrect. The allegations relied on in the Complaint to sustain the imposition of personal liability on Schlesinger are not fraud claims, which may well implicate the particularity requirements of Fed.R.Civ.P. 9(b), but are instead allegations of domination, control and treating of corporate assets as his own. These allegations, albeit general, permit a defendant to frame an appropriate response and are therefore sufficient to withstand a motion to dismiss under the federal rules. Schlesinger cites no federal authorities for the proposition that pleading an *alter ego* theory in federal court requires detailed factual allegations. On the contrary, such a contention runs counter to the system of notice pleading adopted by the federal rules. *Bower v.*

*Weisman,* 650 F.Supp. 1415, 1420 (S.D.N.Y.1986) (finding no need to plead facts from which control could be inferred). Federal courts have consistently held that general allegations of dominion and control will suffice to survive a motion to dismiss claims predicated on an *alter ego* theory. *See, e.g., Farley v. Davis,* No. 91–5530, 1992 WL 110753, at *6, 1992 U.S.Dist. LEXIS 6364, at *15 (S.D.N.Y. May 8, 1992) (finding no need to plead underpinning facts to support *alter ego* claim); *Sierra Rutile Ltd. v. Katz,* No. 90–4913, 1992 WL 236208, at *5, 1992 U.S.Dist. LEXIS 13518, at *15 (S.D.N.Y. Sept. 9, 1992) (denial of motion to dismiss count in complaint rooted in *alter ego* theory predicated on pervasive allegation of domination and control); *Citicorp Int'l Trading Co. v. Western Oil & Ref. Co.,* 771 F.Supp. 600, 608 (S.D.N.Y. 1991) (allegation that entity "was a mere instrumentality of Citibank and was so dominated by Citibank as to have no will of its own or ability to answer for itself" deemed sufficient to withstand motion to dismiss a third party complaint alleging claim under doctrine of piercing the corporate veil).

■■■ Schlesinger's vigorous attack on the Trustee's alter ego claims seems more animated by a conviction that the Trustee will be unable to prove such claims, rather than a realistic assessment of the legal merits of his argument. He forgets that the question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether a plaintiff is entitled to offer evidence in support of his claim. *See Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686. The pleading stage is an inappropriate time to attempt to evaluate possible evidence or to determine whether the Trustee will ultimately succeed in supporting his *alter ego* allegations.

## V.

■■ In addition to the assets allegedly misappropriated by Schlesinger, the Trustee also asserts in the Complaint that Schlesinger and other defendants entered into a common scheme or plan to divert

assets of the Debtors. On the basis of such common scheme or plan, the Trustee asserts conspirative liability on the part of Schlesinger for alleged misappropriations, even for asset transfers which did not inure to his benefit. Presumably, it is this alleged conspiracy which constitutes the foundation for the Trustee's recovery request of not less than $20 million from Schlesinger. The Trustee, however, has failed to plead a cognizable cause of action for conspiracy against Schlesinger.

The Complaint makes no reference to any specific connection between Schlesinger and the Debtors or any of the many other individuals or entities named as defendants in this lawsuit. The pleaded basis for the conspiracy is the Trustee's grouping together of Schlesinger with other defendants and assertions of a "common scheme and plan" (Complaint ¶¶ 17 and 68), "assistance" of Schlesinger (Complaint at ¶ 21), and "aid and connivance" of Schlesinger (Complaint ¶¶ 48 and 64). In addition, the Trustee alleges that Schlesinger, among others, "masterminded" the common plan or scheme to divert the Debtors' assets. Complaint ¶ 17.

■■■■ Although New York law does not acknowledge civil conspiracy as an independent tort or separate cause of action, see, e.g., *Sterling Nat'l Bank & Trust Co. v. Federated Dep't Stores, Inc.*, 612 F.Supp. 144, 146 n. 1 (S.D.N.Y.1985); *Louis Marx & Co., Inc. v. Fuji Seiko Co., Ltd.*, 453 F.Supp. 385, 392 & n. 18 (S.D.N.Y.1978) (citing additional authority), New York law does recognize a kind of limited tort of conspiracy to do an unlawful thing. *Arlinghaus v. Ritenour*, 622 F.2d 629, 639 (2d Cir.), *cert. denied*, 449 U.S. 1013, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980); *Ahmed v. National Bank of Pakistan*, 572 F.Supp. 550, 555 (S.D.N.Y.1983). Unlike criminal conspiracy where the conspiracy itself is the crime, a plaintiff in a civil conspiracy action under New York law can recover for overt acts committed as part of the conspiracy and not for the mere fact of the conspiracy itself. *See Powell v. Kopman*, 511 F.Supp. 700, 704 (S.D.N.Y.1981); *Kajtazi v. Kajtazi*, 488 F.Supp. 15, 21 (E.D.N.Y.1978); *Ei-*

*senberg v. Feiner (In re Ahead by a Length, Inc.)*, 100 B.R. 157, 170 (Bankr. S.D.N.Y.1989).

■■■■ A conspiracy allegation expands the reach of recovery in civil actions by attempting to link a defendant with the acts of his co-conspirators, where otherwise he could not have been implicated. *Resnick v. Resnick*, 722 F.Supp. 27, 37 (S.D.N.Y.1989) ("Conspiracy is a rule of responsibility for the tortious actions of others which broadens the reach of traditional torts by connecting a defendant with the acts and declarations of his or her co-conspirators."); *Glaser v. Kaplan*, 5 A.D.2d 829, 830, 170 N.Y.S.2d 522, 525 (2d Dep't), *reh'g denied*, 5 A.D.2d 873, 172 N.Y.S.2d 550 (2d Dep't 1958); *see also Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir.), *cert. denied*, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956) ("The charge of conspiracy in a civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts."). If the conspiracy is proven, it is well established that a conspirator is liable for the acts of each participant in the conspiracy, as if they were his own. *See, e.g., Kashi v. Gratsos*, 790 F.2d 1050, 1054–55 (2d Cir.1986); *Bridge C.A.T. Scan Assocs. v. Ohio–Nuclear Inc.*, 608 F.Supp. 1187, 1191 (S.D.N.Y.1985); *Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1536 (S.D.N.Y. 1985); *Superintendent of Ins. v. Freedman*, 443 F.Supp. 628, 638 (S.D.N.Y.1977), *aff'd*, 594 F.2d 852 (2d Cir.1978).

■■■■ As varied policy considerations are impacted and the reported authorities are often seemingly in conflict, we set forth some fundamental principles governing pleading requirements in a civil action for conspiracy. Where, as here, absent allegations of fraud as part of the conspiracy charges, the pleadings in a civil action for conspiracy must comply with the general requirements of Fed.R.Civ.P. 8 that the complaint contain a direct, simple and concise statement that the pleader is entitled

to relief.[3] 5 *Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d* § 1233 at 253, 255 (2d ed. 1990). It should be recognized that the nature of conspiracies often make it impossible to provide details at the pleading stage. A plaintiff therefore should be allowed to resort to the discovery process and not easily be subject to dismissal of his complaint alleging conspiracy. As Judge Raggi observed, "where ... a conspiracy is alleged, 'great leeway' is allowed since, by the nature of conspiracy, details may not be readily known at the time of pleading." *Lazzaro v. Manber*, 701 F.Supp. 353, 372 (E.D.N.Y.1988) (citing *Kravetz v. Brukenfeld*, 591 F.Supp. 1383, 1387–88 (S.D.N.Y. 1984)). Nonetheless, a complaint alleging civil conspiracy must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the defendant to prepare an adequate responsive pleading. 5 *Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d* § 1233 at 257–58 (2d ed. 1990).

The Trustee is seeking to impose liability on Schlesinger for the claimed misconduct of co-defendants and for the benefits obtained by such persons or entities from their alleged misdeeds. He fails to satisfy the pleading requirement of linkage by just stating that Schlesinger was part of an alleged conspiracy. *See Devaney v. Chester*, 709 F.Supp. 1255, 1264 (S.D.N.Y.1989) (granting motion to dismiss where trustee failed to set forth facts to support claim that defendant was a knowing participant in a conspiracy); *NCR Credit Corp. v. Underground Camera, Inc.*, 581 F.Supp. 609, 611 (D.Mass.1984) (holding that mere recital that a conspiracy took place renders pleading defective); *Baranski v. Serhant*, 603 F.Supp. 232, 234 (N.D.Ill.1985) (motion to dismiss granted where interrelationship between the alleged conspirators was not alleged).

No underlying facts are alleged in the Complaint which might connect Schlesinger, even inferentially, with an alleged conspiracy. Unlike other defendants in this lawsuit possessing a stated nexus to the Debtors such as officers, directors, financial and legal advisors or having an alleged involvement with certain entities named as co-defendants, Schlesinger would appear to be an outsider. Incantations that Schlesinger "masterminded" a conspiracy, without more, are insufficient to overcome dismissal of the conspiracy charges. The Trustee tries another tact in an effort to sustain conspiracy charges against Schlesinger. He groups together Schlesinger with other defendants in a transparent effort to imply that Schlesinger is responsible for the alleged misappropriation of others. Lumping together Schlesinger with other defendants in collective charges of misconduct, absent allegation of any connecting thread, is inadequate to sweep Schlesinger under the rubric of a sustainable pleading asserting conspiracy as against him. Even under the liberal pleading requirements of the federal rules, some minimum allegations must be made to sustain a conspiracy charge. *Baranski v. Serhant*, 603 F.Supp. at 234.

The Trustee's papers in opposition to the motion to dismiss place Schlesinger at the heart of an alleged conspiracy to loot the Debtors' assets. Indeed, the Trustee argues that Schlesinger was involved in and responsible for the overall demise of the Debtor and that he "was very much a key, almost dominant player in the dismantling and ultimate destruction of Harvard and Stephen Douglas."[4] Our dismissal of the conspiracy portions of the Complaint against Schlesinger is not to suggest that it is impossible for the Trustee to state a valid claim against Schlesinger. However, the simple fact is that the Trustee has not done so here. It may well be that the deficiencies of the Complaint relating to the conspiracy charges against Schlesinger

---

**3.** The presence of fraud as part of a conspiracy charge brings the complaint under the requirement of Fed.R.Civ.P. 9(b) that the circumstances constituting fraud be stated with particularity.

**4.** Trustee's Supplemental Memorandum of Law In Opposition To Defendant Schlesinger's Dismissal Motion at p. 6.

could be cured by amendment. Therefore, the Trustee is given leave to replead for those purposes; it would be an abuse of this court's discretion to do otherwise than to grant such leave to replead. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (outright refusal to grant leave to amend without any justifying reason for the denial is abuse of discretion); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 50 (2d Cir.1991); *Luce v. Edelstein,* 802 F.2d 49, 56–57 (2d Cir.1986); *Kaster v. Modification Sys., Inc.,* 731 F.2d 1014, 1018 (2d Cir.1984).

### VI.

Based on all of the foregoing, the Complaint frames cognizable claims for relief against Schlesinger sounding in conversion, monies had and received or unjust enrichment; it fairly put Schlesinger on notice as to the nature of these claims; and the court cannot say as a matter of law that the Trustee is not entitled to relief against Schlesinger under any provable set of facts. Accordingly, the motion to dismiss those components of the Complaint is denied.

However, the Complaint fails to plead facts to support Schlesinger's claimed involvement in an alleged conspiracy sufficient to overcome the motion to dismiss. Accordingly, the conspiracy portions of the Complaint against Schlesinger are struck and to that extent the motion to dismiss is granted. Nonetheless, leave to replead the dismissed conspiracy allegations is granted. Such repleading shall be made, if at all, within twenty days of the date of the order to be entered.

Finally, Schlesinger's request that the Trustee's claims against him be, in effect, consolidated with claims against Bali and Private Brands in separate adversary proceedings instituted by the Trustee against those entities, is denied as being premature. The denial of such request is without prejudice to renewal, at an appropriate time, upon proper application on notice to the Trustee.

**SETTLE AN ORDER CONSISTENT WITH THIS DECISION.**